KACEY L. STIFF, by her Mother and Next Friend, Deana S. Stiff, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. EASTERN ILLINOIS AREA OF SPECIAL EDUCATION *et al.*, Defendants-Appellants and Cross-Appellees (John E. Heldman *et al.*, Defendants).

Fourth District   No. 4—95—0387

Argued December 13, 1995.—Opinion filed May 29, 1996.

John P. Ewart and Beverly J. Ring (argued), both of Craig & Craig, of Mattoon, for appellants.

James R. Glenn (argued), of Glenn & Logue, of Mattoon, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1994, plaintiffs, Deana S. Stiff, as mother and next friend of Kacey L. Stiff, and Harold M. Stiff, filed an amended complaint against defendants Eastern Illinois Area of Special Education (EIASE), a special education organization consisting of several school

units, and Sharon Kayle Grewell, Jeffrey N. Reynolds, John E. Heldman, Pamela S. Richardson, Susan Sprind, and James A. Bossert, teacher employees of EIASE, alleging that defendants' actions during a field trip where Kacey sustained a leg injury were negligent and constituted willful and wanton conduct. In February 1995, a jury trial was held. At the close of plaintiffs' evidence, the trial court granted a directed verdict as to the willful and wanton counts, and the jury subsequently found defendants liable in negligence.

Defendants appeal, arguing that (1) section 24—24 of the School Code (Code) granted them immunity from plaintiffs' negligence claims (Ill. Rev. Stat. 1989, ch. 122, par. 24—24); (2) sections 2—201 and 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) granted them immunity from plaintiffs' negligence claims (Ill. Rev. Stat. 1989, ch. 85, pars. 2—201, 2—109); (3) sections 2—202 and 2—109 of the Act granted them immunity from plaintiffs' negligence claims (Ill. Rev. Stat. 1989, ch. 85, pars. 2—202, 2—109); and (4) the trial court erred by denying defendants' motions for directed verdict and judgment *n.o.v.* Plaintiffs cross-appeal, arguing that the trial court erred by allowing defendants' motion for directed verdict as to the willful and wanton counts.

Because we agree with defendants' first argument and disagree with plaintiffs' argument, we affirm in part, reverse in part, and remand with instructions.

## I. BACKGROUND

In May 1991, plaintiffs filed their initial complaint, alleging that defendants' failure to properly supervise the activities of the students was negligent and constituted willful and wanton conduct. In July 1991, defendants moved to dismiss all counts of that complaint. The trial court subsequently denied that motion, and defendants appealed. This court in *Stiff v. Eastern Illinois Area of Special Education*, 251 Ill. App. 3d 859, 621 N.E.2d 218 (1993), affirmed the trial court's denial of defendants' motion to dismiss and remanded the case to the trial court for a determination of the sufficiency of the pleadings on the issue of negligence in light of the supreme court's decision in *Cates v. Cates*, 156 Ill. 2d 76, 619 N.E.2d 715 (1993), which partially abrogated parental immunity.

Upon remand, plaintiffs filed an amended complaint, and defendants moved to dismiss all counts of that complaint. The trial court denied that motion, specifically finding that immunity pursuant to section 24—24 of the Code did not attach to defendants "because of the Appellate Court's decision [(*Stiff*)] in which they applied the *Cates versus Cates* decision *** to the circumstances of this case."

At the trial, the evidence showed the following. During 1989 through 1991 school years, Kacey, who is an epileptic, was enrolled in a special education program at the treatment and learning center, which operates under the auspices of EIASE. Sharon Grewell was Kacey's teacher and Jeffrey Reynolds was her adaptive physical education teacher.

Grewell, Reynolds, and Kacey's parents participated in several planning conferences, during which they chose programs designed to improve Kacey's balance and coordination. Through participation in various exercises, Kacey became capable of performing some maneuvers on playground equipment while her teachers stood close by, just outside of her arms' reach.

In October 1990, when Kacey was seven years old, defendants took Kacey and five other students on a field trip to a state park. While hiking on a trail, the group came upon a bridge which had a fallen tree lying across the handrails. The tree was between $2^1/2$ to 3 feet from the floor of the bridge. Beyond the tree there was a step, which dropped down six to eight inches to the next level of the bridge.

Reynolds unsuccessfully attempted to lift or move the tree. James Bossert, Kacey's crisis interventionist, tried to help Reynolds, but their joint efforts were unsuccessful in moving the tree. The EIASE staff members present in the park—Reynolds, Bossert, John Heldman (a teacher's assistant), Pamela Richardson (a teacher's assistant), and Susan Sprind (a student teacher)—then conferred and decided it was safe to proceed under the tree to cross the bridge.

Reynolds and Bossert crossed the bridge first, and the four male students followed. A female student crossed next, followed by Grewell and Kacey. As Grewell approached the tree, Kacey was behind her. Grewell went under the tree and stepped forward. Kacey then went under the tree as Heldman followed behind her. Sprind and Richardson were behind Heldman.

Grewell turned back and watched Kacey walk to the edge of the step on the bridge with her right hand on the handrail. Kacey extended her left hand behind her. There was a distance of a few inches between her hand and Heldman, who had just proceeded under the tree. Kacey took a step, her leg buckled under her, and she slipped off the bridge under the handrail. Kacey fell four to six feet into a creek bed and fractured her left femur. At the time of the fall, Grewell was approximately halfway across the bridge and Reynolds, having crossed the bridge, was already on the trail.

At the close of plaintiffs' evidence, defendants moved for a directed verdict as to all counts of the complaint. The court granted the motion as to the willful and wanton counts, but denied the mo-

tion as to the negligence counts. Defendants renewed the motion as to the negligence counts at the close of all evidence, but the court again denied it.

## II. ANALYSIS

### A. Immunity Pursuant to the School Code

Defendants first argue that section 24—24 of the Code grants them immunity from plaintiffs' negligence claims. We agree.

■ Section 24—24 of the Code provides as follows:

"Teachers and other certified educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. *In all matters relating to the discipline in and conduct of the school and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all* athletic and *extracurricular programs,* and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 122, par. 24—24.

In *Kobylanski v. Chicago Board of Education,* 63 Ill. 2d 165, 172-73, 347 N.E.2d 705, 709 (1976), the supreme court interpreted section 24—24 of the Code as conferring upon educators the status of parent or guardian in relation to their students. The supreme court further held that, in order to impose liability on educators, a plaintiff must prove willful and wanton misconduct. *Kobylanski,* 63 Ill. 2d at 173, 347 N.E.2d at 709.

In 1993, however, the supreme court in *Cates* narrowed parental immunity—and thus, educator immunity—by holding that a plaintiff may recover against a parent for negligence, except when the conduct is *inherent* to the parent-child relationship. *Cates,* 156 Ill. 2d at 104-05, 619 N.E.2d at 729. In so holding, the supreme court wrote the following:

"[S]uch conduct [inherent to the parent-child relationship] constitutes an *exercise of parental authority and supervision over the child* or an exercise of discretion in the provision of care to the child. These limited areas of conduct require the skills, knowledge, intuition, affection, wisdom, faith, humor, perspective, background, experience, and culture which only a parent and his or her child can bring to the situation; our legal system is ill-equipped to decide the reasonableness of such matters." (Emphasis added.) *Cates,* 156 Ill. 2d at 104-05, 619 N.E.2d at 729.

The supreme court in *Cates* further noted that the test for immunity is "whether the alleged conduct concerns parental discretion in disci-

pline, supervision and care of the child." *Cates*, 156 Ill. 2d at 104, 619 N.E.2d at 729. The supreme court in *Cates* concluded that a father was not immune where he negligently operated a vehicle while his child was a passenger. *Cates*, 156 Ill. 2d at 106, 619 N.E.2d at 729.

■ We assume for our analysis that *Cates* applies retroactively to the circumstances of this case. Applying the principle of *Kobylanski* and the standard set forth in *Cates*, we conclude that the conduct involved in this case (1) is related to the conduct of the students during an extracurricular program, and (2) constitutes conduct inherent to the parent-child relationship, such that the teachers—standing *in loco parentis*—are immune from claims of negligence. In the face of a physical obstacle, Kacey's teachers conferred, considered various possibilities, and decided that Kacey, with the teachers in close proximity, could maneuver under the fallen tree and across the bridge. In our judgment, this conduct represents a parent's discretion and decision-making in supervising her child. Especially when working with a student with a disability, a teacher (just as a parent) must exercise such discretion in deciding just how far he can push that student toward independence from her disability. The conduct involved in this case falls within the limited areas of conduct which "require the skills, knowledge, intuition, affection, wisdom, faith, humor, perspective, background, experience, and culture which only a parent *** can bring to the situation." Accordingly, we hold that section 24—24 of the Code bars any claim of negligence against defendants.

We recognize that we previously upheld the trial court's denial of a motion to dismiss in this case. In our previous decision, however, we rejected the trial court's basis for denying the motion, and we remanded for further proceedings in light of *Cates*. *Cates* was decided only after the previous appeal was filed in our court, and plaintiff was entitled to an opportunity to amend her pleadings in an attempt to state a cause of action under *Cates*.

### B. Directed Verdict As to the Willful and Wanton Counts

On cross-appeal, plaintiffs argue that the trial court erred by allowing defendants' motion for directed verdict as to the willful and wanton counts of their amended complaint because defendants showed utter indifference toward Kacey's safety and "abandoned" her while crossing the bridge. We emphatically disagree.

■■ A trial court should enter a directed verdict only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern*

*R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). Section 1—210 of the Act defines willful and wanton conduct as follows:

> "[A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

Further, willful and wanton conduct, as contemplated in section 1—210 of the Act, consists of more than mere inadvertence, incompetence, or unskillfulness. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 637, 650 N.E.2d 585, 592 (1995).

■ Our review of the record indicates that the teachers' actions could not possibly constitute willful and wanton conduct. The record shows absolutely *no* evidence that defendants displayed either an utter indifference toward or conscious disregard for Kacey's safety while crossing the bridge. Instead, the record shows that defendants evinced concern for their students, including Kacey. Defendants cautioned the students about how to conduct themselves on the trail and considered the various options before making a decision to cross over the bridge. Two teachers, Bossert and Reynolds, proceeded under the tree and across the bridge before anyone else. Kacey went under the tree after Grewell, and Heldman followed behind her. Grewell turned back and watched Kacey walk to the edge of the step on the bridge with her right hand on the handrail. Kacey extended her left hand behind her toward Heldman. At that point, there was a distance of just a few inches between her hand and Heldman, who had just proceeded under the tree.

Because the evidence, when viewed in the light most favorable to plaintiffs, so overwhelmingly favors defendants, we hold that the trial court did not err by granting defendants' motion for directed verdict on the willful and wanton counts of plaintiffs' amended complaint.

### III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand with instructions to dismiss with prejudice the negligence counts of plaintiffs' amended complaint.

Affirmed in part and reversed in part; and cause remanded with directions.

COOK, P.J., and GARMAN, J., concur.