(No. 84094.—

JOSHUA A. HENRICH, by his Mother and Next Friend, Judith Henrich, Appellant, v. LIBERTYVILLE HIGH SCHOOL *et al.*, Appellees.

*Opinion filed December 3, 1998.—Supplemental opinion filed on denial of rehearing June 1, 1999.*

HEIPLE, J., specially concurring.
HARRISON, J., joined by NICKELS, J., dissenting.
McMORROW, J., also dissenting.
HARRISON, McMORROW and RATHJE, JJ., dissenting on denial of rehearing.

Scott B. Gibson and Richard S. Kopsick, of Waukegan, for appellant.

Hinshaw & Culbertson, of Chicago (Bruce L. Carmen and Stacey L. Seneczko, of counsel), for appellees.

Marilyn F. Johnson, of Chicago (William A. Morgan, of counsel), for *amici curiae* Board of Education of the City of Chicago *et al.*

Peter R. Coladarci, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

CHIEF JUSTICE FREEMAN delivered the judgment of the court:

Sections 24—24 and 34—84a of the School Code (105 ILCS 5/24—24, 34—84a (West 1994)) immunize teachers and certain other educational employees from liability for injuries caused by their negligent supervision of school activities. To recover for such an injury, a plaintiff student must plead and prove that the teacher committed willful and wanton misconduct by such supervision. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 171-73 (1976). Those sections apply equally to public and private schools. See, *e.g.*, *Hilgendorf v. First Baptist Church*, 157 Ill. App. 3d 428, 429 (1987).

Also, when properly raised, the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) provides an extensive list of immunities to local governmental units, specifically including school districts. 745 ILCS 10/2—106 (West 1994). Section 3—108(a) of the Act immunizes a local public entity or a public employee from liability for an injury caused by a failure to supervise an activity on, or a failure to supervise the use of, any public property. 745 ILCS 10/3—108(a) (West 1994). Section 3—108(a) immunizes local public entities and employees from liability based on both ordinary negligence and willful and wanton misconduct. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391-92 (1996). The Tort Immunity Act does not apply to private schools. *Cooney v. Society of Mt. Carmel*, 75 Ill. 2d 430, 434 (1979).

The question presented for review is which statute's immunity controls in a case involving the failure to supervise public school activities: the immunity provided by the School Code, or the immunity provided by the Tort Immunity Act when properly raised? We hold that in such a case the immunity provided by the Tort Immunity Act controls.

BACKGROUND

This cause is before us following a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Pro-

cedure (735 ILCS 5/2—619(a)(9) (West 1994)). The motion admits all well-pled allegations in the complaint and reasonable inferences to be drawn from the facts. *Fireman's Fund Insurance Co. v. SEC Donahue, Inc.*, 176 Ill. 2d 160, 161 (1997).

The complaint alleges as follows. On February 14, 1994, plaintiff, Joshua A. Henrich, underwent spine fusion surgery for a lower back medical condition. On September 2, 1994, plaintiff's surgeon advised plaintiff in a letter that he was permanently restricted from participating in "contact sports, such as wrestling and football in gym class at school." On or before January 25, 1995, defendant Libertyville High School District 128 (district) had received a copy of the letter and also had actual knowledge of plaintiff's lower back condition and the permanent restrictions on his activities in physical education class.

On February 2, 1995, plaintiff was a 17-year-old student at Libertyville High School. On that date, a substitute physical education instructor supervised the physical education class at the high school's pool area. The instructor required plaintiff to participate in a game of water basketball. The district knew or should have known that water basketball involved physical contact between the players. While participating in the water basketball game, plaintiff was severely and permanently injured.

Plaintiff brought a personal injury action in the circuit court of Lake County against the district, the high school (collectively, the district), and Justin Burg, a fellow student. Count I of the three-count complaint alleged that the district required, allowed, or failed to prohibit plaintiff's participation in the water basketball game. The district so acted knowing that the game involved physical contact, knowing of plaintiff's medical condition, and knowing of the permanent medical re-

strictions on his activities due to his medical condition. Count I also alleged that the district allowed Burg to participate in the game knowing that Burg was a particularly rough player. Count I alleged that the district's acts constituted willful and wanton misconduct.

Count II reiterated the above acts and additionally alleged that the district assigned a noncertified or inadequately trained substitute teacher to the physical education class, and failed to adequately supervise the class. Count II alleges that those acts constituted ordinary negligence.

Count III is directed against Burg and alleges negligence. Burg subsequently brought a counterclaim against the district seeking contribution.

The district filed a combined motion to dismiss the complaint. See 735 ILCS 5/2—619.1 (West 1994). The district sought the dismissal of count I on the ground that it failed to state a cause of action for willful and wanton misconduct. See 735 ILCS 5/2—615 (West 1994). The trial court denied this part of the motion.

The district also sought the dismissal of counts I and II on the ground that the district was immune from liability under the Tort Immunity Act (745 ILCS 10/1—101 *et seq*. (West 1994)). See 735 ILCS 5/2—619(a)(9) (West 1994). The district argued that section 3—108(a) of the Act immunized it from counts I and II. The district also argued that section 3—109 of the Act additionally immunized it from the claims contained in count II. 745 ILCS 10/3—108(a), 3—109 (West 1994).

In separate orders, the circuit court dismissed counts I and II based on the Tort Immunity Act. In dismissing count I, the court expressly found that section 3—108(a) immunized the district from count I. The court also dismissed Burg's counterclaim for contribution against the district. The court noted that count III, directed against Burg, remained pending. The court also found

that its orders were final and appealable. See 155 Ill. 2d R. 304.

On appeal, plaintiff contested only the dismissal of count I, which alleged willful and wanton misconduct. The appellate court upheld the dismissal. 289 Ill. App. 3d 809. The court addressed the issue of which statutory immunity controlled the disposition of count I: section 24—24 of the School Code (105 ILCS 5/24—24 (West 1994)), or section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)). The appellate court concluded that the immunity provided by section 3—108(a) of the Act was available to the district. Since that section immunizes willful and wanton misconduct, the appellate court upheld the dismissal of count I. 289 Ill. App. 3d at 817.

We allowed plaintiff's petition for leave to appeal (166 Ill. 2d R. 315). We subsequently granted the Illinois Trial Lawyers Association leave to file an *amicus curiae* brief in support of plaintiff; we also granted the Chicago Board of Education, the Illinois Association of School Boards, and the Illinois Association of School Administrators leave to file an *amicus curiae* brief in support of the district. 155 Ill. 2d R. 345. We now affirm the judgment of the appellate court.

## DISCUSSION

Section 2—619(a)(9) of the Code of Civil Procedure permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). When ruling on a motion to dismiss, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. On appeal, review is *de novo*. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

This controversy centers upon the interpretation of two immunity statutes. Plaintiff contends that section 24—24 of the School Code (105 ILCS 5/24—24 (West 1994)) controls the disposition of count I. According to plaintiff, since that section does not immunize willful and wanton misconduct, then count I stands. On the other hand, the district contends that section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)) controls the disposition of count I. According to the district, since that section immunizes willful and wanton misconduct, then count I was properly dismissed.

To resolve this issue, we must interpret these two statutes. The primary rule of interpreting statutes, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature. The court should seek the legislative intent primarily in the language of the statute. Also, the statute should be evaluated as a whole; the language within each section of a statute must be examined in light of the entire statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). When this court has interpreted a statute, that interpretation is considered as part of the statute itself unless and until the legislature amends it contrary to the interpretation. *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983); see *People v. Woodard*, 175 Ill. 2d 435, 443-44 (1997).

Section 3—108(a) of the Tort Immunity Act provides in pertinent part that:

> "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1994).

Further, a " '[l]ocal public entity' includes a *** school district." 745 ILCS 10/1—206 (West 1994). Also, the Act must be raised and pled as an affirmative defense or else it is waived, even if the evidence supports the existence or appropriateness of the defense. *Martin v. Chicago*

*Housing Authority*, 264 Ill. App. 3d 1063, 1075 (1994); *First National Bank v. Village of Mundelein*, 166 Ill. App. 3d 83, 90 (1988).

The plain language of section 3—108(a) does not contain an exception for willful and wanton misconduct. Based on this plain language, this court has interpreted section 3—108(a) to immunize willful and wanton misconduct. *Barnett*, 171 Ill. 2d at 391-92. We note that the School Code was not at issue in *Barnett*.

In this case, the district raised the affirmative defense of the Tort Immunity Act. The district contends that since it is a local public entity, then section 3—108(a) applies to count I.

At the time this cause arose, section 24—24 of the School Code, which applies to cities with a population of less than 500,000, and section 34—84a of the Code, which applies to cities with a population of greater than 500,000, provided in pertinent part that:

> "[t]eachers and other certificated educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." 105 ILCS 5/24—24, 34—84a (West 1994).

By its plain language, section 24—24 confers on educators the status of parent or guardian to their pupils. Therefore, this statute grants educators the immunity that parents enjoy (*Kobylanski*, 63 Ill. 2d at 170-73), and which school districts vicariously enjoy (*Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill. 2d 467, 472-73 (1992)).

Section 24—24 of the School Code confers on teach-

ers *in loco parentis* status in all matters relating to the supervision of students in school activities. This court has interpreted section 24—24 to immunize ordinary negligence, but not to immunize willful and wanton misconduct. *Gerrity v. Beatty*, 71 Ill. 2d 47, 50 (1978); *Kobylanski*, 63 Ill. 2d at 171-73. This interpretation is keyed to the rule that parents are not liable to their children for ordinary negligence, but are liable for willful and wanton misconduct. *Thomas v. Chicago Board of Education*, 77 Ill. 2d 165, 171 (1979); *Kobylanski*, 63 Ill. 2d at 170.

We note that this court has narrowed parental immunity to cover only ordinary negligence arising from conduct that is inherent to the parent-child relationship, *i.e.*, conduct that concerns parental discretion in discipline, supervision, and care of the child. Absent such conduct, a child may recover from a parent for negligence. *Cates v. Cates*, 156 Ill. 2d 76, 104-05 (1993). As a result of *Cates*, the educator immunity provided by section 24—24 of the School Code is accordingly narrowed. See *Cates*, 156 Ill. 2d at 110-11 (Miller, C.J., dissenting); *Stiff v. Eastern Illinois Area of Special Education*, 279 Ill. App. 3d 1076, 1080-81 (1996).

Plaintiff contends that since this cause arose from the supervision of students in a school physical education program, then section 24—24 applies to count I.

This court has noted that the immunity provided by section 24—24 of the School Code did not derive from the immunity provided by the Tort Immunity Act. *Kobylanski*, 63 Ill. 2d at 174. This has indicated to the appellate court that section 24—24 of the School Code and section 3—108(a) of the Tort Immunity Act are to be interpreted as two independent statutes. *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 421 (1994); *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 377 (1989). We agree and so hold.

It appears from this examination of section 3—108(a) of the Tort Immunity Act and section 24—24 of the School Code that both immunities apply to count I. Not only must we accept as true the allegations of willful and wanton misconduct contained in count I, but also the circuit court found that count I stated a cause of action. Accordingly, under section 3—108(a) of the Tort Immunity Act, count I cannot stand. However, under section 24—24 of the School Code, count I stands. Thus, the two statutes appear to conflict in this case.

Plaintiff argues that section 24—24 of the School Code controls the disposition of count I because it is more specific than section 3—108(a) of the Tort Immunity Act. It is a well-settled rule of statutory construction that " '[w]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail.' " *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992), quoting *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205 (1954). A policy expressed in the specific statutory provision should prevail over general statutory statements. *Sierra Club v. Kenney*, 88 Ill. 2d 110, 126 (1981).

The appellate court in this case acknowledged that both section 24—24 of the School Code and section 3—108(a) of the Tort Immunity Act applied to count I. 289 Ill. App. 3d at 814-15. The court concluded that section 3—108(a) controlled the disposition of count I. The appellate court described the immunity that section 24—24 of the School Code provides as not arising directly from the statute. Rather, according to the appellate court, "whatever immunity section 24—24 provides arises indirectly from the *in loco parentis* relationship of teachers and other educational employees with students." Further, the court noted that "any immunity provided to a school district by section 24—24 is vicarious in that it is

derived from the immunity provided to teachers and other educational employees." In contrast, the appellate court described the immunity provided by section 3—108(a) of the Tort Immunity Act, read with section 1—206 of the Act, as "much more direct and specific than section 24—24 of the School Code." 289 Ill. App. 3d at 815.

We need not decide whether section 3—108(a) of the Tort Immunity Act is more specific than section 24—24 of the School Code. Rather, we can ascertain the legislative intent from the plain language of section 3—108(a) and can give it effect without resorting to other aids for construction. See *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194 (1978), quoting *Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 350 (1960). Where the language of a statute is unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature. *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 84 (1970). There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute says. *Illinois Power Co.*, 72 Ill. 2d at 194, quoting *Western National Bank*, 19 Ill. 2d at 350.

In the present case, the plain language of section 3—108(a) of the Tort Immunity Act immunizes a local public entity's failure to supervise an activity on or the use of public property (745 ILCS 10/3—108(a) (West 1994)), and a "local public entity" expressly includes a school district (745 ILCS 10/1—206 (West 1994)). The legislature could not have made its intent any plainer.

We reach our conclusion that section 3—108(a) of the Tort Immunity Act controls the disposition of count I also by comparing the plain language of that section with section 24—24 of the School Code. A court presumes that two or more statutes which relate to one subject are governed by one spirit and policy, and that the legislature

intended the statutes to be operative and harmonious. Therefore, statutes relating to the same subject must be compared and so construed with reference to each other that effect may be given to all of the provisions of each, if it can fairly and reasonably be done. *Ashton v. County of Cook*, 384 Ill. 287, 298 (1943).

We note that the Seventy-fourth General Assembly enacted section 24—24 of the School Code (1965 Ill. Laws 1459 (passed June 28, 1965)) and the Tort Immunity Act (1965 Ill. Laws 2982 (passed June 30, 1965)) only two days apart. Statutes that relate to the same subject matter, passed at the same session of the General Assembly, should be interpreted with reference to each other. A court should not consider such statutes inconsistent if it is possible to interpret them otherwise. *People ex rel. Vaughan v. Thompson*, 377 Ill. 244, 249 (1941).

In the present case, section 3—108(a) of the Tort Immunity Act and section 24—24 of the School Code each stands in its own sphere. Section 24—24 of the School Code applies equally to public and private schools. See *Hilgendorf*, 157 Ill. App. 3d at 429; *Cotton v. Catholic Bishop*, 39 Ill. App. 3d 1062 (1976); *Merrill v. Catholic Bishop*, 8 Ill. App. 3d 910 (1972). In contrast, the Tort Immunity Act does not apply to private schools, but only to public schools. *Cooney*, 75 Ill. 2d at 434. Although "public and private schools may sometimes be classified together in light of the similarity of their functions and activities *** it does not follow that the legislature is required to adopt that classification in the *** Tort Immunity Act." *Cooney*, 75 Ill. 2d at 435. By the plain language of section 3—108(a) of the Tort Immunity Act, the legislature has chosen to grant public school teachers and public school districts greater immunity than private school teachers and private schools.

By giving effect to the plain language of section 3—108(a) of the Tort Immunity Act, we effectuate the

purposes of both section 3—108(a) and section 24—24 of the School Code. The Act itself states that its purpose is "to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1—101.1 (West 1994); accord *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995) ("By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims").

Sections 24—24 and 34—84a of the School Code reflect the basic policy "that teachers, standing *in loco parentis*, should not be subjected to any greater liability than parents, who are liable to their children for willful and wanton misconduct." *Kobylanski*, 63 Ill. 2d at 173. This court has explained that those sections:

"reflect a legislative determination that the orderly conduct of the schools and the maintenance of a sound learning atmosphere require that there be a personal relationship between teacher and student in which the teacher has disciplinary and supervisory authority similar to that which exists between parent and child. It is evident that this relationship would be seriously jeopardized if teachers and school districts were amenable to ordinary negligence actions for accidents occurring in the course of the exercise of such authority." *Gerrity*, 71 Ill. 2d at 51.

Thus, "[i]n the interest of student-teacher harmony, litigation between them should not be encouraged—absent wilful and wanton conduct." *Thomas*, 77 Ill. 2d at 171; accord *Albers v. Community Consolidated No. 204 School*, 155 Ill. App. 3d 1083, 1085 (1987); see, *e.g.*, *Stiff*, 279 Ill. App. 3d at 1080-81.

Our interpretation of section 3—108(a) of the Tort Immunity Act is consistent with the purpose of either statute. True, the immunities that section 3—108(a) of the Tort Immunity Act and section 24—24 of the School Code provide serve different purposes. However, both statutes discourage tort claims and, by the plain language of section 3—108(a), the legislature has chosen to

discourage such claims against public school teachers and school districts more broadly. We conclude that section 3—108(a) of the Tort Immunity Act controls the disposition of count I.

According to plaintiff, holding that section 3—108(a) of the Tort Immunity Act controls the disposition of count I is absurd and unjust. To him, we are effectively holding that while parents are required to send their children to school, public school teachers have no tort duty of care for their pupils and parents have no recourse for any injuries to their children, even injuries caused by willful and wanton misconduct. A court presumes that the General Assembly, in enacting legislation, did not intend absurdity or injustice. *Hernon*, 149 Ill. 2d at 195; *Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 128 (1973).

However, to hold that section 24—24 of the School Code controlled the disposition of count I would effectively delete the explicit language in section 1—206 of the Tort Immunity Act that applies section 3—108(a) to school districts. In interpreting a statute, a court should, if possible, give significance and effect to every word without destroying the sense or effect of the law. The court should interpret the statute, if possible, so that no word is rendered meaningless or superfluous. *People ex rel. Barrett v. Barrett*, 31 Ill. 2d 360, 364-65 (1964).

## CONCLUSION

It is the province of the legislature to enact laws; it is the province of the courts to construe them. Courts have no legislative powers; courts may not enact or amend statutes. A court cannot restrict or enlarge the meaning of an unambiguous statute. The responsibility for the justice or wisdom of legislation rests upon the legislature. *People ex rel. Roan v. Wilson*, 405 Ill. 122, 128 (1950); *People ex rel. Nelson Brothers Storage & Furniture Co. v. Fisher*, 373 Ill. 228, 234 (1940). A court must interpret

and apply statutes in the manner in which they are written. A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983).

We hold that section 3—108(a) of the Tort Immunity Act controls the disposition of count I. Since count I states a cause of action for willful and wanton misconduct, and since section 3—108 immunizes willful and wanton misconduct, then count I cannot stand.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE, specially concurring:

I concur with the majority's conclusion that section 24—24 of the School Code (105 ILCS 5/24—24 (West 1994)) and section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)) do not conflict. However, the majority's rationale is wrong.

The two provisions at issue in this case both grant immunity to a defendant where a plaintiff alleges ordinary negligence. However, whereas section 24—24 of the Code grants immunity for ordinary negligence only, section 3—108(a) of the Act grants immunity for *both* ordinary negligence *and* willful and wanton conduct. Thus, where ordinary negligence is alleged, either the Code or the Act may be raised as an affirmative defense, and the two provisions do not conflict. Rather, they simply complement each other.

Where a plaintiff alleges willful and wanton conduct, however, section 3—108(a) of the Act is *alone* available as an affirmative defense. That is because section 24—24 of the Code does not immunize willful and wanton conduct. On the other hand, neither does it *create* liability for willful and wanton conduct. It simply has no

application in that situation. That is to say, section 3—108(a) of the Act does not conflict with section 24—24 of the Code; the Act merely grants a greater immunity than the Code. Consequently, the Act controls the disposition in the case at hand. Thus, I concur with the judgment of the court but not its opinion.

JUSTICE HARRISON, dissenting:

I agree that section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)) contains no exception for willful and wanton misconduct. In my view, however, the majority's discussion of the relationship between section 3—108(a) and section 24—24 of the School Code (105 ILCS 5/24—24 (West 1994)) is fundamentally flawed. Section 24—24 is the controlling provision in this case, not section 3—108(a), and under section 24—24, count I of plaintiff's complaint asserts a viable claim against the school district for willful and wanton misconduct.

In count I plaintiff seeks to hold the school district vicariously liable for the conduct of one of its employees. Where, as here, a school district's liability is vicarious rather than direct, the district is subject to the immunity rules established pursuant to section 24—24 of the School Code if the employee is also subject to those rules. See *Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill. 2d 467, 473 (1992). Not every school employee, however, falls within the ambit of the statute. By its terms, section 24—24 applies only to "teachers and other certificated educational employees." 105 ILCS 5/24—24 (West 1994).

In the case before us today, plaintiff's complaint alleges that the school employee whose conduct is at issue was an agent or employee of the school district, but "not a teacher or certified educational employee." If that were true, disposition of this case would be straightforward. Where an employee is not a teacher or other certified

educational employee, section 24—24 is inapplicable. Accordingly, the statute could not be invoked vicariously with respect to the school district. The question of immunity would be governed instead by the Tort Immunity Act. See, *e.g.*, *Montag v. Board of Education, School District No. 40*, 112 Ill. App. 3d 1039, 1043 (1983) (noncertified school employees subject to section 3—108 of the Tort Immunity Act rather than section 24—24); *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1099 (1989) (employee who was not a teacher performing the function of classroom instruction was protected by provisions of Tort Immunity Act, not section 24—24 of the School Code). Under section 3—108(a) of the Tort Immunity Act, the district would plainly be immune under count I of plaintiff's complaint.

The reason this case is more difficult is that plaintiff's characterization of the employee has proven to be inaccurate. Contrary to plaintiff's allegations, the school employee whose conduct is at issue here was indeed a "teacher[ ]" or "other certificated educational employee[ ]" within the meaning of section 24—24. 105 ILCS 5/24—24 (West 1994). In support of their motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)), defendants submitted affidavits from the school employee and the school superintendent specifically stating that the employee was "a certificated teacher with the State of Illinois" under a current and valid high school teaching certificate issued by the State Teacher Certification Board. A copy of the employee's actual teaching certificate was attached to the employee's affidavit and confirmed his status.

Because the employee fell within the category of employees governed by section 24—24, that statute, as well as section 3—108(a) of the Tort Immunity Act, was applicable to the allegations contained in count I of

plaintiff's complaint. To understand the relationship between these two provisions, it is important to understand the scope of section 24—24.

Section 24—24 confers immunity on teachers and other certificated educational employees for "matters relating to the discipline in and conduct of the schools and the school children." 105 ILCS 5/24—24 (West 1994). Unlike section 3—108(a), however, section 24—24's immunity extends only to ordinary negligence. The statute does not confer immunity for willful and wanton misconduct. *O'Brien v. Township High School District 214*, 83 Ill. 2d 462, 467 (1980). Accordingly, our court has long interpreted the statute to mean that a public school student may bring an action to recover damages for injuries he sustained as a result of conduct by teachers or coaches who exhibited a reckless disregard for his welfare. *O'Brien*, 83 Ill. 2d at 469; *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 173 (1976); see *Palmer v. Mt. Vernon Township High School District 201*, 169 Ill. 2d 551, 562 (1996).

Today the majority has taken an altogether different view. Under its new approach, the student's action would be barred by section 3—108(a) of the Tort Immunity Act even if it would otherwise be proper under section 24—24 of the School Code. My colleagues believe this view is compelled by the plain language of section 3—108(a) "without resorting to other aids for construction." 186 Ill. 2d at 391. The flaw in their analysis is that we are not dealing with section 3—108(a) alone. We have two separate statutes here, and if both apply by their terms, the "plain language" rule settles nothing.

In attempting to reconcile section 3—108(a) with section 24—24, we must be guided by the principle that, whenever possible, a court must construe statutes which are in conflict or which appear repugnant so as to give effect to both. See *People ex rel. Moore v. Chicago, Burl-*

*ington & Quincy R.R. Co.*, 414 Ill. 419, 425 (1953). The majority's analysis violates this rule. Under my colleagues' approach, section 24—24 has been reduced to a nullity. For all practical purposes, it will no longer serve any function.

The majority tries to save section 24—24 by asserting that it will continue to apply to private schools. This argument has no basis in the law and no support in the precedent of our court. Except in specific and limited circumstances not present here, the School Code is, by its terms, limited in application to public schools. Similarly, the provisions of section 24—24 govern only conduct of teachers and other educational employees who are certified by the state. The state certification requirements do not apply to private schools.

Private schools may, of course, voluntarily adopt the standards imposed by the School Code. In addition, the School Code may provide an appropriate model for formulating common law standards of care owed by teachers and other personnel employed by private schools. It is important to keep in mind, however, that the usefulness of the School Code in making that type of policy determination is independent of the law's actual purpose, meaning and effect. With respect to private schools, the School Code has absolutely no legal force except in narrowly delineated, incidental and indirect ways. See, *e.g.*, *Chady v. Solomon Schechter Day Schools*, 269 Ill. App. 3d 31, 35 (1995) (because plaintiff's employer was a private school, the School Code did not apply to give her any statutory rights to employment). As a result, when the majority suggests that section 24—24 was intended by the legislature to apply to private schools but not to public schools, they have gotten things completely backwards.

Contrary to what my colleagues may believe, section 24—24 of the School Code can be reconciled with section

3—108 of the Tort Immunity Act, and it can be reconciled in a very straightforward way. Where there are two statutory provisions relating to the same subject, either in the same act or in separate acts, the specific provision controls and should be applied. *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992). Section 24—24 is plainly more specific in its application than section 3—108. Section 3—108 pertains generally to the liability of public entities or public employees for failure to supervise an activity on or the use of public property. Section 24—24 of the School Code, by contrast, applies to a narrowly defined group of public employees, "teachers and other certificated educational employees," in a narrowly defined context, namely, when they are engaged in "activities connected with the school program, including all athletic and extracurricular programs." 105 ILCS 5/24—24 (West 1994). Accordingly, where, as here, section 24—24 applies, it controls over section 3—108(a) and permits a claim for willful and wanton misconduct.

There is nothing the slightest bit novel or controversial about this conclusion. As my previous discussion has indicated, our court has long recognized the viability of damage actions against school districts based on the willful and wanton misconduct of teachers and other certified educational employees. I cannot fathom why my colleagues have suddenly decided to disavow that precedent and leave the children of this state completely unprotected from even the most reckless and irresponsible conduct of those charged with their care at school. Perhaps it is simply another example of the majority's utter disregard for children. See, *e.g., Barnett v. Zion Park District*, 171 Ill. 2d 378 (1996); *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995). In any case, it is an outrage.

My colleagues cannot escape responsibility for their actions by placing blame on the legislature. The legisla-

ture is presumed to know our prior construction of the law, and although section 24—24 has been amended repeatedly, the legislature has made no changes that would alter our view that willful and wanton misconduct is actionable. Under these circumstances, we must assume that the legislature intended the law to have the meaning we previously ascribed to it. *Cripe v. Leiter*, 184 Ill. 2d 185, 197-98 (1998); *People v. Agnew*, 105 Ill. 2d 275, 280 (1985). Accordingly, it is not the legislature that will be to blame for the awful consequences of today's decision. It is the members of this court.

JUSTICE NICKELS joins in this dissent.

JUSTICE McMORROW, also dissenting:

I disagree with and reject the first sentence in Justice Harrison's dissenting opinion in this case. In all other respects, I agree with and join in that opinion. I further dissent, as follows.

The majority has voted to affirm dismissal of plaintiff's claim grounded in willful and wanton misconduct, despite the fact that this result immunizes public schools from civil liability for even deliberate injuries to students. See 745 ILCS 10/1—210 (West 1996). I find this result untenable.

The majority opinion unfortunately perpetuates and extends erroneous interpretations of section 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act previously published by the court. In *Barnett v. Zion Park District*, 171 Ill. 2d 378 (1996), this court ruled that section 3—108 blanketed the Zion Park District with immunity, despite allegations by the plaintiff that lifeguards at a Zion Park District swimming pool knowingly and willfully disregarded pleas to help the plaintiff's drowning decedent, thereby causing the decedent's death. I dissented in *Barnett* (*Barnett*, 171 Ill. 2d at 399 (McMorrow, J., dissenting)), and attempted

to demonstrate the fallacy of the majority's conclusions. I argued, *inter alia*, that the absence of an explicit exemption in section 3—108 for willful and wanton conduct does not lead ineluctably to the conclusion that the legislature meant to include willful and wanton behavior within the scope of immunized conduct. I noted as well that reasons sustaining governmental immunity for simple negligence do not necessarily apply to willful and wanton conduct, and therefore a legislative purpose to extend immunity to willful and wanton conduct demands an express statement of that intent. I observed that the majority's expansive reading of section 3—108 defied our constitutional duty (Ill. Const. 1970, art. XIII, § 4) to find only those immunities expressly granted by statute and to assume that any immunity not specifically enacted did not exist.

My conviction that this court reads a willful and wanton exception into an enactment where none exists remains as strong today as when I stated it in *Barnett*, and later stated it in *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 213 (1997) (McMorrow, J., concurring in part and dissenting in part), and *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 354 (1998) (McMorrow, J., concurring in part and dissenting in part). For the reasons stated in those separate opinions, I would reverse the decisions of the circuit and appellate courts in the case at bar and reinstate count I of plaintiff's complaint.

### SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In his petition for rehearing, plaintiff notes that the General Assembly has recently exercised its legislative

responsibility in this area. The legislature rewrote section 3—108; it now reads as follows:

"§ 3—108. (a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury *unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.*

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation *and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury.*" (Emphasis added.) Pub. Act 90—805, § 5, eff. December 2, 1998 (amending 745 ILCS 10/3—108 (West 1994)).

The amended section 3—108 expressly allows claims of willful and wanton misconduct against local public entities and employees such as contained in count I of plaintiff's complaint. Plaintiff notes that the new section 3—108 took effect on December 2, 1998, and that this court issued its original judgment the next day, December 3. Plaintiff contends that the new version of section 3—108 applies to his case. He asks us to reverse the dismissal of count I and to remand this cause to the circuit court for further proceedings relating thereto. We cannot accept plaintiff's contention, and we decline to reverse the dismissal of count I.

Plaintiff argues that the legislative debates surrounding the amended section 3—108, coupled with the fact of its enactment, demonstrate that the legislature never intended to immunize willful and wanton misconduct. Thus, according to plaintiff, since the unamended section 3—108 never immunized willful and wanton misconduct, then plaintiff should be allowed to pursue count I. We disagree. Illinois courts ascertained the legislative intent of the unamended section 3—108 from its plain language.

*Barnett,* 171 Ill. 2d at 391-92; *Payne v. Lake Forest Community High School District 115,* 268 Ill. App. 3d 783, 785-87 (1994). That intent must prevail and be given effect without resort to other interpretive aids. See *Envirite Corp. v. Illinois Environmental Protection Agency,* 158 Ill. 2d 210, 216-17 (1994).

We conclude that the amended section 3—108 does not apply to count I also because the school district in this case has a vested right to the total immunity provided by the unamended section 3—108. It is settled that where the legislature changes the law pending an appeal, "a reviewing court should simply apply the law as it exists at the time of the appeal, *unless doing so would interfere with a vested right."* (Emphasis added.) *First of America Trust Co. v. Armstead,* 171 Ill. 2d 282, 290 (1996). "Although not capable of precise definition, a vested right is a complete and unconditional demand or exemption that may be equated with a property interest." *First of America Trust,* 171 Ill. 2d at 291. The due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) protects such vested rights from legislative interference. *First of America Trust,* 171 Ill. 2d at 289. Further, the property rights of local public entities "are protected by the same constitutional guaranties which shield the property of individuals from legislative aggression." *Board of Education of Normal School District v. Blodgett,* 155 Ill. 441, 450 (1895).

This court has agreed with the view that " 'an exemption from a demand or an immunity from prosecution in a suit is as valuable to the one party as the right to the demand or to prosecute the suit is to the other.' " *Blodgett,* 155 Ill. at 449, quoting *Campbell v. Holt,* 115 U.S. 620, 630, 29 L. Ed. 483, 487, 6 S. Ct. 209, 214 (1885) (Bradley, J., dissenting, joined by Harlan, J.). Thus, it has long been recognized that "[a] vested ground of defense is as fully protected from being cut off or destroyed by an

act of the legislature as is a vested cause of action." 16A C.J.S. *Constitutional Law* § 260(b), at 91 (1984); accord 6 R.C.L. *Constitutional Law* § 306, at 319 (1915); see, *e.g., Massa v. Nastri,* 125 Conn. 144, 148-49, 3 A.2d 839, 841 (1939) (amended statute cannot retroactively impose on defendant liability for simple negligence when, under former statute, defendant was liable only for willful and wanton misconduct). Put simply, the legislature lacks the power to reach back and breathe life into a previously barred claim. See *Sepmeyer v. Holman,* 162 Ill. 2d 249, 254 (1994); *Wilson v. All-Steel, Inc.,* 87 Ill. 2d 28, 40-41 (1981).

When this cause of action arose, the school district's immunity under the unamended section 3—108 was "unconditional," and " 'immediate, fixed and determinate' " (see *First of America Trust,* 171 Ill. 2d at 291, quoting *City of Chicago v. Collin,* 302 Ill. 270, 275 (1922)); it did not depend on the entry of a judgment. Thus, the school district's right to the total immunity provided by the unamended section 3—108 vested when the cause of action accrued. See *Harraz v. Snyder,* 283 Ill. App. 3d 254, 263 (1996); *Zielnik v. Loyal Order of Moose, Lodge No. 265,* 174 Ill. App. 3d 409, 411 (1988); *Massa,* 125 Conn. at 148-49, 3 A.2d at 841. The amended section 3—108 cannot reach back and take that vested right away, impose a new duty on the school district, and breathe life into this previously barred claim.

We note that none of the cases cited by Justice Harrison in his supplemental dissent involves a local public entity as a tort defendant. It is true that a school district, in its capacity as a political subdivision of the state, has no due process rights. *People ex rel. Dixon v. Community Unit School District No. 3,* 2 Ill. 2d 454, 465-66 (1954); *People ex rel. Taylor v. Camargo Community Consolidated School District No. 158,* 313 Ill. 321, 324-25 (1924). However, the Tort Immunity Act places a school district,

when in the role of a tort defendant, in a different position. Section 1—101.1(b) of the Tort Immunity Act provides that "[a]ny defense or immunity, common law or statutory, available to any private person shall likewise be available to local public entities and public employees." 745 ILCS 10/1—101.1(b) (West 1994). In this case, since a private defendant has a vested right to the defense of an immunity, then so does the school district in its position as a private defendant.

## DISSENTING OPINIONS UPON DENIAL OF REHEARING

JUSTICE HARRISON, dissenting:

The day before the court issued its original judgment, new legislation took effect which amended the Tort Immunity Act to eliminate the problem created by the judgments of the circuit and appellate courts in this case. Under the new version of the law, the Tort Immunity Act cannot be invoked by public entities to avoid liability for willful and wanton conduct in supervising activities on public property. Accordingly, even if my colleagues were correct that count I of plaintiff's complaint is subject to the Tort Immunity Act rather than the School Code, that count is no longer subject to dismissal on grounds of statutory immunity. We should therefore grant the petition for rehearing, reverse the judgment of the appellate court, and remand the cause to the circuit court for further proceedings.

The majority's refusal to apply the new version of the law to the present case is wholly improper. Our court has repeatedly held that where the legislature changes the law pending an appeal, the case must be disposed of by the reviewing court under the law as it then exists, not as it was when the judgment was entered in the lower court. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 215 (1994); *Bates v. Board of*

*Education, Allendale Community Consolidated School District No. 17*, 136 Ill. 2d 260, 268-69 (1990).

Although an exception to this rule exists where application of the change in the law would affect a vested right (*First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 290 (1996)), that exception is inapplicable here. It is inapplicable because it is founded on the due process clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2) (see *First of America Trust Co.*, 171 Ill. 2d at 289), and political subdivisions of the state, including school districts, have no due process rights.

The reason that political subdivisions of the state cannot claim due process protection against action by the General Assembly is legislative supremacy. That doctrine holds that because counties, cities, school districts and other local governmental entities are created by authority of the legislature, their rights and powers may be enlarged, diminished, modified or revoked by the legislature at any time at its pleasure. Under the doctrine, the state may apportion the common property and common burdens of such entities however it wishes, with or without notice, regardless of whether the inhabitants approve, and without any need to pay just compensation. *People ex rel. Gutknecht v. City of Chicago*, 414 Ill. 600, 621-22 (1953). Properly speaking, these entities have no property of their own. In fact and in law, their property is the property of the state and subject to legislative will. That being so, the entities have no property rights of which they may be deprived in violation of the due process clause of our constitution. *People ex rel. Dixon v. Community Unit School District No. 3*, 2 Ill. 2d 454, 466 (1954).

There is nothing novel about these principles. Had my colleagues checked the law after 1895, they would have discovered that the doctrine of legislative supremacy is well established and has been frequently applied

by our court. Only two years ago, in *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 413 (1997), we specifically held that because school boards are "municipal corporations" created by the legislature and wholly within the legislature's control, they cannot assert due process claims against legislation enacted by the General Assembly. This holding followed an established line of cases from our court (see, *e.g.*, *Village of Riverwoods v. Department of Transportation*, 77 Ill. 2d 130, 136 (1979); *Meador v. City of Salem*, 51 Ill. 2d 572, 578 (1972); *Supervisors of the County of Boone v. Village of Rainbow Gardens*, 14 Ill. 2d 504, 507-08 (1958); *People ex rel. Taylor v. Camargo Community Consolidated School District No. 158*, 313 Ill. 321, 324-25 (1924)) and from the appellate court (see, *e.g.*, *City of Evanston v. Regional Transportation Authority*, 202 Ill. App. 3d 265, 278 (1990); *Franciscan Hospital v. Town of Canoe Creek*, 79 Ill. App. 3d 490, 496-97 (1979); *People v. Valentine*, 50 Ill. App. 3d 447, 452-53 (1977)).

The majority's analysis is also infirm because it overlooks the language and purpose of the due process clause. That provision applies by its terms to "persons" and was intended to protect the property of individuals and corporations. Governmental entities do not constitute such "persons" (see *Franciscan Hospital*, 79 Ill. App. 3d at 496-97), and due process guarantees do not extend to the sovereign or subsidiaries of the sovereign (see *City of Evanston*, 202 Ill. App. 3d at 278). See also *Cronin v. Lindberg*, 66 Ill. 2d 47, 55-56 (1976) (school board and superintendent had no right to raise due process challenge to statutory amendment because "[d]ue process guarantees, in the ordinary sense, do not extend to them"); *Village of Schaumburg v. Doyle*, 277 Ill. App. 3d 832, 836 (1996) (municipalities cannot assert due pro-

cess claims). Accordingly, there is no constitutional impediment to application of the amended version of the Tort Immunity Act here.

Contrary to my colleagues' assertion, section 1—101.1(b) of the Tort Immunity Act (745 ILCS 1—101.1(b) (West 1994)) does not alter this conclusion. That provision is inapposite. The statute refers to private individuals as a way to define the range of defenses available to a local public entity. Its point is simply to make clear that if a defense is available to a private person, it is available to a governmental entity as well. For example, when comparative negligence was adopted as a defense in Illinois, this section served as authority for the proposition that the defense could be invoked by municipalities just as it could be used by any other tort defendant. *Wagner v. City of Chicago*, 166 Ill. 2d 144, 152 (1995).

In the matter before us here, defining the scope of the applicable immunity is not at issue. Under the majority's disposition, the immunity rules have been set out by the legislature in section 3—108. The real question in this case is which version of section 3—108 should apply. That is an issue which section 1—101.1(b) does not address and was not intended to address.

To say that a local governmental entity may avail itself of the same defenses available to a private individual, as section 1—101.1(b) does, is not the same as saying that a local governmental entity is a private individual, or is equivalent to a private individual for any other purposes. The Tort Immunity Act merely grants immunities and defenses. It is not a source of rights. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412-13 (1991); 745 ILCS 10/1—101.1(a) (West 1994). Moreover, because it is in derogation of the common law, it must be strictly construed against the public entity involved. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 44 (1998). Accordingly, it cannot be interpreted as bestowing on public

entities due process or any other constitutional protections. Local governmental entities can assert defenses where authorized by law, but where the legislature sees fit to change the law and eliminate an immunity, as it has done here, the governmental entities have no basis under the due process clause of the Illinois Constitution of 1970 to complain.

Even if we could ignore the language and purpose of the due process clause and revoke the legislative supremacy doctrine, the majority's analysis would still be untenable. My colleagues' "vested right" analysis presumes that before the recent statutory amendment, school districts were, in fact, immune from liability arising from willful and wanton conduct. As I pointed out in my original dissent, however, such was not the case. Prior to this litigation, the law was well established that a public school student could bring an action to recover damages for injuries he sustained as a result of teachers or coaches who exhibited a reckless disregard for his welfare. It was not until our original judgment here that this court determined that school districts could invoke the Tort Immunity Act to avoid liability in such cases. By that time, however, the Tort Immunity Act had already been amended to provide that public entities are not, in fact, immune from liability for willful and wanton conduct in supervision of activities on public property. As a result, there was never a time when the defendant school district could claim a settled expectation that it would be immune from liability arising from circumstances such as those present here.

Although the circuit and appellate courts had ruled in favor of the defendant school district before the amended version of the Tort Immunity Act took effect, that is of no consequence. Contrary to the majority's unsupported assertion, the school district's right to invoke immunity under the old law did not vest when the circuit

court dismissed count I of the complaint. Under this court's precedent, the district could only claim a vested right after final judgment was entered. At the time the amended law took effect in this case, there was no final adjudication because the cause remained on appeal. The new law should therefore apply. *Bates v. Board of Education*, 136 Ill. 2d at 269.

Given the absence of a final adjudication, the majority's claim that the legislature was attempting to breathe life into a previously barred claim is nonsensical. Nor can my colleagues legitimately object to application of the new legislation on separation of powers principles. Unlike *In re Marriage of Cohn*, 93 Ill. 2d 190, 202-07 (1982), there has been no showing that the legislature acted as it did with the express intention of overruling the appellate court's decision in this case. Moreover, unlike *In re Petition of Kirchner*, 164 Ill. 2d 468, 496-98 (1995), the case does not present a situation where the legislature was attempting to alter the rights of parties after this court had finally adjudicated those rights. As previously noted, the change in the law here came before our decision, not afterwards.

Aside from the technical flaws in the majority's disposition, it is unworthy of support for one final and inarguable reason. It is utterly lacking in basic fairness. The injured students who preceded Joshua Henrich could recover under the law as previously construed by our court. The injured students who follow Joshua Henrich will be able to recover under the law as revised by the General Assembly. It is only Joshua Henrich who is without redress. Why?

When the legislature establishes a political entity such as a school district and then expressly decrees that the entity may no longer invoke immunity, our court has no legitimate basis for refusing to honor the legislature's will. To cling to the old law, as my colleagues do today, is

the sorriest form of judicial obstructionism. It is an insult to the legislature and an insult to the people of Illinois.

For a court with any notion of justice, the legislature's amendment of the law following the lower court's actions here would at least give pause to reconsider whether our construction of the original statute was correct. See *People v. Brooks*, 158 Ill. 2d 260, 270 (1994) (where amendment to statute is enacted soon after controversy arises regarding statute's interpretation, amendment may be indicative of legislative intent even where the law is not ambiguous). For my colleagues, however, the amendment is nothing more than an unwelcome impediment to denying another child's claims.[1] The law means nothing. Fairness means nothing. Justice means nothing. All that matters to them is that this one school district be protected from this one crippled boy. Poor Joshua. Poor us.

JUSTICE McMORROW, also dissenting:

The General Assembly's amendment to section 3—108 of the Tort Immunity Act (745 ILCS 10/3—108 (West 1994)), effective December 2, 1998, excludes willful and wanton conduct from the immunity granted by the statute. The amendment further fortifies the conclusion I advocated in this opinion and elsewhere (see *Barnett v. Zion Park District*, 171 Ill. 2d 378, 399 (1996) (McMorrow, J., dissenting)), namely, that our legislature never intended to immunize willful and wanton conduct in the immunity provisions of section 3—108.

---

[1]With all due respect to Justice Rathje, I do not accuse my colleagues of disregard for the rights of children simply because they do not agree with me. I accuse them of disregard for the rights of children based upon their consistent pattern of denying recovery to children no matter how shocking the facts or how compelling the law might be. Examples are cited in my original dissent.

JUSTICE RATHJE, also dissenting:

I agree with the legal analysis set forth in Justice Harrison's dissent to the majority's original opinion. Unlike Justice Harrison, however, I would not ascribe an "utter disregard for children" to my colleagues in the majority simply because they reach a conclusion different from my own.

I also agree with Justice Harrison's supplemental dissent that the Illinois Constitution in no way precludes the application of the amended section 3—108 to this case. I likewise dissent.