FIRST DIVISION

June 30, 2000

Nos. 1-96-3134, 1-96-3360 (Consolidated)

ELGIA (LEE) TROTTER, JR., Indiv. and as Special Adm. of the Estate of Nathaniel Trotter, Deceased,

Plaintiff-Appellee and Cross-Appellant,

v.

SCHOOL DISTRICT 218 and DALE JANSSEN,

Defendants-Appellants and Cross-Appellees.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Arthur A. Sullivan,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff, Elgia (Lee) Trotter, Jr., brought this wrongful death action against defendants, School District 218 (District 218) and Dale Janssen (Janssen) following the drowning death of his 14-year-old son, Nathaniel, during freshmen swimming class at Richards High School.  Plaintiff's amended complaint contained three counts.  Counts I and II of plaintiff's amended complaint sought damages for willful and wanton conduct pursuant to the Wrongful Death Act, (740 ILCS 180/1 
et seq. 
(West 1996)).  Count III sought damages for funeral expenses.  Defendants claimed immunity from any liability under section 3-108 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) ( 745 ILCS 10/1-101 
et seq.
 (West 1996)).  Defendants also argued for summary judgment in that plaintiff failed to show willful and wanton conduct and that defendants were entitled to discretionary public official immunity.

The trial court made two separate rulings.  The trial court first found that defendants were not entitled to immunity under section 3-108(a) of the Tort Immunity Act for the alleged willful and wanton supervision of Nathaniel during swimming class.  745 ILCS 10/3-108(a) (West 1996).  The trial court, however, certified the following questions for interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308):

"(1) Whether section 3-108 immunity can be used by defendants to immunize what is alleged to be willful and wanton conduct by a certified teacher in the supervision of a required physical education swimming class in light of the [S]chool [C]ode and doctrine of 
in loco parentis
 immunity;

(2) Are the actions of non-certified student guard, under the supervision of a certified teacher, entitled to section 3-108 immunity[?]"

We allowed leave to appeal these certified questions under Supreme Court Rule 308. 155 Ill. 2d R. 308.

The trial court's second set of orders subject to this appeal granted defendants' summary judgment motion in part as to six allegations within plaintiff's amended complaint and denied plaintiff's motion to file a second amended complaint.  The court found that plaintiff failed to present evidence of willful and wanton conduct as a matter of law on three of those allegations and that defendants were entitled to "discretionary/public official immunity" on the remaining three allegations.  745 ILCS 10/2-201 (West 1996).  The trial court made its order granting partial summary judgment to defendants final and appealable under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  The court also denied plaintiff's motion to file a second amended complaint and found no just reason to delay appeal of this order.  Plaintiff therefore appeals from the orders granting partial summary judgment in favor of defendants and denying his motion to file a second amended complaint.  We have jurisdiction under Supreme Court Rule 304(a).  155 Ill. 2d R. 304(a).  

We answer both certified questions in the affirmative and, accordingly, reverse the trial court's denial of summary judgment for the defendants on the issue of defendants' immunity under preamended  section 3-108 of the Tort Immunity Act. We find defendants are entitled to immunity under preamended  section 3-

108 for the allegations in plaintiff's amended complaint of willful and wanton misconduct in the supervision of a physical education swimming class under the preamended Tort Immunity Act which applies to this case.  We also affirm the trial court's grant of  summary judgment to the defendants on paragraphs 10(f),(g),(i), (j) and (k) of plaintiff's amended complaint.  We reverse the trial court's grant of summary judgment under section 2-201 of the Tort Immunity Act but find the conduct alleged in paragraph 10(l) is entitled to immunity under preamended section 3-108. 

FACTS 

A. Background of Swimming Instructor and Student Guards

Ron Kyler, School District 218's curriculum director of physical education, health and driver's education, hired Dale Janssen to teach "Swim I" or freshman swimming class at Richards High School for the 1991-92 school year.  Kyler knew that Janssen lacked certifications in water safety and life guarding through the American Red Cross.  No other swimming instructors lacked these certifications.  Kyler believed Janssen was qualified to teach Swim I because he had a physical education teaching certificate, had taken a class in cardiopulmonary resuscitation (CPR) , and was motivated and intelligent.

In August 1991, Janssen suffered an injury to his knee and had surgery.  He was released from his doctor's care in October of 1991 and completed physical therapy in October of 1991.  Janssen further testified that he resumed normal walking in October of 1991 and went swimming in November of 1991.

Swimming coach and teacher Tom Newton sponsored a student guard club that consisted of experienced student swimmers.  Newton assigned student guards to various freshman swimming classes.  The student guards were not lifeguards but acted as an extra set of eyes.  They helped oversee swimming class and were required to alert the teacher if a problem arose.  Newton assigned Lauren Krastin and Jill Styx to guard the class that Nathaniel attended and to assist Janssen.  While both Krastin and Styx were freshman and on the freshman swimming team, neither had any training in life guarding or water safety.  Janssen did not know whether Krastin and Styx had any training or water safety certifications before they became students guards in his freshman swimming class.

B. The Drowning

Before Nathaniel's death, he had completed exercises in floating and swimming.  The day before his drowning, Nathaniel completed a 25-yard freestyle swim of the pool.  Janssen then found Nathaniel qualified to swim in the deep end of the pool and use the diving board during free swim.  Janssen, however, gave Nathaniel a poor grade for his freestyle swim and noticed that Nathaniel was slow and appeared tired from the freestyle swim. 

On January 8, 1992, during swimming class, while Janssen was testing the girls of the swimming class, the boys were assigned to free swim.  Janssen first learned of trouble when a student stated that "Nate is in trouble."  Janssen looked toward the deep end and observed Nathaniel facedown below the surface.  Janssen initially thought that Nathaniel may be performing a front float, but the student insisted that Nathaniel was in trouble.  Janssen then began to walk to the deep end and saw Krastin jump into the pool. 

Krastin testified at her deposition that she first believed that Nathaniel was in trouble when she saw him at the bottom of the pool in the deep end.  She attempted to get a life buoy or flotation device but it was tangled and then, to avoid any further delay, jumped into the pool without any flotation devises.  Styx saw Nathaniel bob up and down three times before she believed that Nathaniel was in trouble.  A student attempted to get a "shepherd's crook" over to Nathaniel but he was unable to grab it, and he began to submerge into the water.  Styx saw Krastin jump into the pool first and when she was having trouble retrieving Nathaniel, she jumped in to help pull Nathaniel out of the water. Once Nathaniel was brought to the surface, Janssen, standing at the deck, also assisted in getting Nathaniel out of the water.  Janssen then administered CPR.

C. Condition of Pool Safety Equipment

The record reflects that the pool was equipped with the following safety equipment: two buoys, two rings, and two shepherd's crooks.  As stated above, a student attempted to get one of the shepherd's crooks to Nathaniel but Nathaniel was unable to grab it.  Krastin testified that the ring and buoy were tangled together and she did not have time to untangle them before attempting to rescue Nathaniel.  Tom Newton testified that the flotation device would not have been tangled the day before the drowning accident because he routinely checked the equipment, and, if anything were tangled, he would have untangled it.  School District 218 did not maintain rafts in the pool area.

D. Rulings of the Trial Court

Defendants moved for summary judgment, claiming immunity from liability under sections 3-108, 1-202, 2-109, 2-201, 3-106 of the Tort Immunity Act.  745 ILCS 10/3-108; 1-202; 2-109; 2-201; 3-106 (West 1996).
 
 Defendants also asserted that, for any of plaintiff's allegations not subject to the Tort Immunity Act, plaintiff failed to present evidence of willful and wanton conduct. On July 1, 1996, the trial court denied defendants' motion for summary judgment based on preamended section 3-108.  Relying on 
Kobylanski v. Chicago Board of Education
, 63 Ill. 2d 165 (1976), the trial court determined that sections 24-24 and 34-84a of the School Code (105 ILCS 5/24-24; 34-84a (West 1996)) did not immunize physical education instructors for willful and wanton misconduct in the supervision of students and preamended section 3-108 of the Tort Immunity Act did not alter this lack of immunity.

On July 12, 1996, the defendants moved for reconsideration of the trial court's denial of their motion for summary judgment based on preamended section 3-108(a) and additionally moved for a ruling on defendants' other grounds for summary judgment in their original motion.  On August 13, 1996, the trial court denied defendants' motion for reconsideration, but granted defendants' motion for summary judgment in part.  The court found that plaintiff did not present evidence of material facts to support his allegations of willful and wanton conduct in paragraphs 10(f), 10(i), and 10(j) of his amended complaint and accordingly entered judgment in favor of defendants regarding these allegations.  The court further found that section 2-201 of the Tort Immunity Act provided defendants with immunity from the allegations in paragraphs 10(g), 10(k), and 10(l) of plaintiff's amended complaint and entitled defendants to summary judgment regarding these allegations as well.  745 ILCS 10/2-201 (West 1996).

On August 23, 1996, the trial court granted defendants' motion under Supreme Court Rule 308 (155 Ill. 2d R. 308) and certified, for interlocutory review, the two questions as previously noted, which involve the scope of immunity under preamended section 3-108(a) of the Tort Immunity Act (745 ILCS 10/3-108(a) (West 1996)) in relationship to sections 24-24 and 34-84a of the School Code (105 ILCS 5/24-24, 34-84a (West 1996)).  The trial court also denied plaintiff's motion for leave to file a second amended complaint that attempted to add a fourth count under the special duty doctrine.  This appeal then followed.

ANALYSIS

I. Trial Court's Certified Questions for Review

We first address the two certified questions for interlocutory review pursuant to Supreme Court Rule

308 (155 Ill. 2d R. 308).  The interpretation of the Tort Immunity Act is a question of law and our review is 
de novo
. 
 Barnett v. Zion Park District
, 171 Ill. 2d 378, 385 (1995).  When interpreting the Tort Immunity Act, the supreme court has directed courts to "seek the legislative intent primarily from the language used in the Tort Immunity Act. * * *  If [the court] can ascertain the legislative intent from the plain language of the [Tort Immunity] Act itself, that intent must prevail * * *."  
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 193 (1997). 

Section 3-108(a) of the preamended Tort Immunity Act provides:

"(a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by the failure to supervise an activity on or the use of any public property."  745 ILCS 10/3-108(a) (West 1996).

 

The trial court found and plaintiff now argues that the School Code and not the Tort Immunity Act governs the immunity of public school districts and public school teachers. 105 ILCS 5/24-24, 34-84a. School Code section 24-24 applies to cities with populations over 500,000, and section 34-84a applies to cities with populations under 500,000.  Both sections provide that teachers or other educational employees enjoy the same immunity from suits by their students as a parent or guardian enjoys against suits by a child.  105 ILCS 5/24-24, 34-84a (West 1996).  Thus, based on the School Code, educators are not liable to their students for ordinary negligent conduct but are liable for willful and wanton conduct.  
Kobylanski
, 63 Ill. 2d at 170-73.  Defendants, however, contend that the  immunity of preamended section 3-108 of the Tort Immunity Act  prevails over sections 24-24 and 34-84a of the School Code and that they are immune from student suits alleging willful and wanton misconduct in the supervision of a physical education class.

Our supreme court recently resolved the issue of the relationship between sections 24-24 and 34-84a of the School Code and section 3-108(a) of the Tort Immunity Act and the apparent conflict between these two statutes.  
Henrich v. Libertyville High School
, 186 Ill. 2d 381 (1998), 
supplemental opinion filed after denial of rehearing
 (1999).  In 
Henrich
, a student sued the school district for negligent and willful and wanton conduct involving supervision during a mandatory physical education class.  The student had recently undergone back surgery and provided the school district a copy of a letter from a surgeon that advised the student to avoid "contact sports."  The student alleged that, despite his medical condition, a substitute physical instructor required him to play in a game of water basketball, and during the contact sport, the student was seriously injured.  
Henrich
, 186 Ill. 2d at 384-85.

Both the trial and appellate courts dismissed the student's count for willful and wanton conduct against the school district based on the absolute immunity of section 3-108(a).  745 ILCS 10/3-108(a) (West 1996).  The supreme court affirmed.  The court noted that the plain language of section 3-108(a) does not contain an exception for willful and wanton conduct and therefore section 3-108 immunizes "willful and wanton misconduct."  
Henrich
, 186 Ill. 2d at 388.  Although section 24-24 of the School Code does not immunize willful and wanton misconduct, the court held that this provision does not conflict with section 3-108(a).  The court further noted, that while section 24-24 of the School Code applies equally to private and public schools, section 3-108(a) applies only to public schools.  The court thus concluded that, "[b]y the plain language of section 3-108(a) of the Tort Immunity Act, the legislature has chosen to grant public school teachers and public school districts greater immunity than private school teachers and private schools."  
Henrich
, 186 Ill. 2d at 392.  The court also rejected the argument that section 3-108(a) did not apply to a school district.  The court noted that section 3-108(a) immunizes "a local public entity's failure to supervise an activity on or the use of public property (745 ILCS 10/3-108(a)(West 1994)), and a 'local public entity'
 expressly includes a school district (745 ILCS 10/1-206 (West 1994))."  
Henrich
, 186 Ill. 2d at 391.

We, however, note that the legislature amended section 3-108 in 1998.  The amended section 3-108 no longer provides immunity for a local entity or public employee's willful and wanton misconduct in its failure to supervise an activity on or the use of public property.  Pub. Act 90-805, eff. December 2, 1998 (amending 745 ILCS 10/3-108 (West 1996)).  However, in 
Henrich
, the supreme court held that a school district has a vested right to the absolute immunity in the preamended section 3-108(a)
 and that "[t]he amended section 3-108 cannot reach back and take that vested right away, impose a new duty on the school district, and breathe life into this previously barred claim."  
Henrich
, 186 Ill. 2d at 405.  Pursuant to 
Henrich
, the preamended section 3-108(a) governs the immunity to the certified teacher and school district in this case because the absolute immunity of preamended section 3-108(a) vested at the time this cause of action accrued.  
Henrich
, 186 Ill. 2d at 404.  We conclude, based on 
Henrich
, that preamended section 3-108(a) provides immunity to defendants for what is alleged to be willful and wanton conduct of a certificated teacher in the supervision of a required physical education swimming class, and we answer the first certified question in the affirmative.

Plaintiff next argues that even if section 3-108 applies, defendants did not provide "qualified" supervision and defendants should not be able to rely on the immunity of section 3-108(a) but should be governed by section 3-108(b).  745 ILCS 5/3-108(a)(b) (West 1996).  Section 3-108(b) provides an exception to the absolute immunity of section 3-108(a).  It states:

 "Where a local public entity or public employee designates a part of a public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable for an injury proximately caused by its failure to provide supervision during the said hours posted."  745 ILCS 10/3-108(b) (West 1996).

For the section 3-108(b) exception to the immunity of section 3-108(a) to apply, there needs to be hours posted and the alleged failure to provide supervision must have occurred during the posted hours.  In this case, section 3-108(b) does not apply because the supervision occurred during a required physical education class.  No hours were posted at the swimming pool.  Plaintiff does not even allege that the failure to supervise occurred during a time frame when the school district posted hours for use of the pool for purposes of swimming, as required for section 3-108(b) to apply.  During the freshman swimming class, the pool was only available to the students and employees of Richards High School and was not open to the public. The section 3-108(b) exception does not apply and defendants are therefore entitled to the  immunity of preamended section 3-108(a).  
Dixon v. Chicago Board of Education
, 304 Ill. App. 3d 744, 748 (1999). 

The second certified question asks us to determine if preamended section 3-108(a) immunity applies to the conduct of the volunteer student guards.  We find that it does.  Section 1-202 of the Tort Immunity Act defines an "employee" under the Tort Immunity Act.  It states that an "'[e]mployee' includes a present or former officer, member of the board, commission or committee, agent, volunteer, servant or employee, whether or not compensated, but does not include an independent contractor."  745 ILCS 10/1-202 (West 1996).  Preamended section 3-108(a) grants absolute immunity to a public entity or a public employee.  745 ILCS 10/3-108(a) (West 1996). 

An unpaid student manager has been found to fall within the definition of section 1-202 because of the volunteer status of the student.  
Sunderland v. Tri-City Community Unit School District No. 1
, 193 Ill. App. 3d 266, 269 (1990).  In 
Sunderland
, plaintiff sued a fellow student and manger of the school's volleyball team for injuries plaintiff sustained in the school gymnasium.  The student asserted immunity under the Tort Immunity Act and the appellate court agreed.  It found that because the student manager was unpaid and under the supervision of teachers and coaches, she was a volunteer.  The court cited the unambiguous language of section 1-202 that includes volunteers within the definition of an employee under the Tort Immunity Act.  
Sunderland
, 193 Ill. App. 3d at 269.

In this case, Styx and Krastin were likewise student volunteers and the plain language of section 1-

202 controls our decision.  Styx and Krastin applied for the position of student guard to assist the freshman swimming class, were not compensated for their services, and were under the direct supervision of Janssen. In 
Sunderland
, the court noted that the legislature broadened the immunities of the Tort Immunity Act in 1986 by including the words "agent" and "volunteer" in the language of section 1-202.  
Sutherland
, 193 Ill. App. 3d at 270.  Therefore, because of their status as volunteers, both Styx and Krastin qualify as public employees. Consistent with the language of the Tort Immunity Act and the clear intention of the legislature, we conclude that the actions of uncertified student guards under the supervision of a certified teacher are entitled to immunity under preamended section 3-108 of the Tort Immunity Act.  We answer the second certified question in the affirmative.  745 ILCS 10/3-108(a) (West 1996).  Thus, we answer both certified questions in the affirmative.  We therefore reverse the trial court's denial of defendant's motion for summary judgment regarding the allegations within plaintiff's amended complaint of willful and wanton supervision.  We find the defendants are entitled to immunity under preamended section 3-108(a) for the allegations of willful and wanton supervision. 

II. Trial Court's Grant of Partial Summary Judgment

We address plaintiff's appeal of the trial court's grant of summary judgment to defendants on paragraphs 10(f), (g), (i), (j), (k) and (l) of plaintiff's amended complaint and denial of plaintiff's request to file a second amended complaint.   Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 1996).  We review a grant of summary judgment 
de novo
.  
Ruane v. Amore
, 287 Ill. App. 3d 465, 473 (1997).

The trial court granted summary judgment to defendants on six specific sections of paragraph 10 of plaintiff's amended complaint.  In all six paragraphs plaintiff charged defendants with willful and wanton conduct.  The court granted summary judgment as to paragraphs 10(f), (i) and (j) because the court found no evidence of willful or wanton conduct.  The court granted summary judgment on paragraphs 10(g), (k) and (l) because the court found defendants were entitled to discretionary public official immunity as to the conduct alleged in those subsections.  We first consider application of discretionary public official immunity to paragraphs 10(g), (k) and (l).

A. Summary Judgment For Defendants Based On Discretionary Public Official Immunity

The trial court found defendants were entitled to discretionary public official immunity and granted summary judgment to defendants on the following allegations of willful and wanton misconduct in paragraph 10 of plaintiff's amended complaint.

"g. delegated important duties to two, unqualified minor students instead of having those

duties performed by competent individuals;

* * * 

                k. failed to provide qualified instructors and educational personnel in the swimming pool area

during plaintiff's physical education (swimming) class;

                l. failed to provide adequately trained instructors and/or other individuals with such degree and

skill necessary to respond to emergency situations." 

In holding that defendants were entitled to discretionary immunity from the above allegations, the trial court relied on sections  2-109 and 2-201 of the Tort Immunity Act.  745 ILCS 10/2-201, 2-209 (West 1996).  Section 2-201 states as follows:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201 (West 1996).

Section 2-109 extends immunity to a public entity for the acts or omissions of its employees where the "employee is not liable."  745 ILCS 10/2-109 (West 1996).  Plaintiff argues that because he only alleges willful and wanton misconduct, the immunity of section 2-201 does not apply.  Our supreme court, however, recently determined that only the plain language of the Tort Immunity Act can limit the scope of the immunity of a particular section, and
 therefore the court concluded that section 2-201 immunizes both negligent and willful and wanton misconduct.  
In re Chicago Flood Litigation
, 176 Ill. 2d at 196.   Therefore, if section 2-201 immunity applies, then defendants would be immune from liability for both negligent as well as willful and wanton acts and omissions.  745 ILCS 10/2-201 (West 1996). 

Plaintiff further argues that the alleged wrongful conduct constituted ministerial acts and not the exercise of discretion or determination of policy and therefore section 2-201 immunity does not apply to defendants.    We must determine whether the trial court erred in finding that section 2-201 of the Tort Immunity Act provided immunity for the conduct of defendants as described in paragraphs 10(g), (k) and (l) of plaintiff's complaint.   The Illinois Supreme Court has interpreted section 2-201 of the Tort Immunity Act to mean that immunity will not attach unless the plaintiff's injury results from an act or omission by the employee in determining policy when acting in the exercise of discretion.  
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 341 (1998). 

Section 2-201 provides discretionary immunity for acts undertaken in the determination of policy; however, it does not provide immunity if the acts are ministerial in nature.  Moreover, there is no statutory definition for the terms "discretion," "policy" and "ministerial," and courts resort to common law definitions. 
Snyder v. Curran Township
, 167 Ill. 2d 466, 473 (1995).
  
Under common law, discretionary acts are those of a public, legislative, or quasi-judicial character that are unique to a particular public office. 
 Snyder
, 167 Ill. 2d at 474.  Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to legal authority, and without reference to the official's discretion as to the propriety of the act.  
Snyder
, 167 Ill. 2d at 474.

In 
Snyder
, the court found that the placement of a road warning sign was a ministerial act because a

statute directed the appropriate side of the road for placement of  the sign.  
Snyder
, 167 Ill. 2d at 471.  In 
Harinek
, plaintiff alleged that injury was proximately caused by the fire department's implementation of a fire drill at plaintiff's place of employment.  
Harinek
, 181 Ill. 2d at 342.  The court first found that the fire Marshall made a determination of policy as contemplated in section 2-201.  The court defined policy decisions as "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests."  
Harinek
, 181 Ill. 2d at 342, quoting 
West v. Kirkham
, 147 Ill. 2d 1, 11 (1992).  The court held that the fire marshall balanced several interests during the planning and implementation of the fire drill such as time, efficiency, departmental resources, and safety.  
Harinek
, 181 Ill. 2d at 342-43.  In 
Harinek
, the supreme court found that the fire marshall's decision to plan and to execute a fire drill was an exercise of discretion.  Unlike 
Snyder
, the fire marshall was under no legal mandate, and no rule, law, or regulation required him to perform his duties in a prescribed manner.  The marshall had final responsibility for fire drills within the city, and how he chose to implement the drill constituted an exercise of discretion, free from the requirements of any legal mandate, rule, law or regulation.  
Harinek
, 181 Ill. 2d at 343.

Immunity under section 2-201 will not apply if the plaintiff's injury results from an act or omission by the employee that is ministerial in nature.  
In re Chicago Flood Litigation
, 176 Ill. 2d at 194.  Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to the legal authority, and without reference to the official's discretion as to the propriety of the act.  
Snyder
, 167 Ill. 2d at 474.  For example, a municipal unit exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan, it acts ministerially and is bound to see that the work is carried out in a reasonably safe and skillful manner.  
In re Chicago Flood Litigation
, 176 Ill. 2d at 194.

Critical to the determination of whether section 2-201 immunity applies is whether the plaintiff''s injury results from an act or omission by the defendants that was ministerial or that was the result of the defendants' determining policy when acting in the exercise of discretion.  If the injury results from a ministerial act or omission, then the defendants are not entitled to section 2-201 immunity.  If the injury results from an act or omission of defendants in determining policy in the exercise of discretion, then the defendants are immune from liability under section 2-201.  In the plaintiff's amended complaint at paragraph 10(g) and (k), the plaintiff alleges that injury was the result of the fact that District 218: (g) delegated important duties to two unqualified minor students instead of having those duties performed by competent individuals; and (k) failed to provide unqualified instructors and educational personnel in the swimming pool area during plaintiff's physical education (swimming) class.

           In 
Johnson v. Mers
, 279 Ill. App. 3d 372 (1996), summary judgment was granted for the defendant municipalities for their discretionary acts in hiring its police officers.  The court stated that hiring a police officer "is inherently discretionary and is not performed on a given state of facts in a prescribed manner* * *. * * * [T]here are many factors which a police department must consider and evaluate.  The hiring decision is not one which is made when certain specific factors are present, with no regard to the hiring officials' discretion."  
Johnson
, 279 Ill. App. 3d at 380.

The conduct alleged in paragraph 10(k), specifically, providing instructors for a physical education class, is like the hiring of the police officer in 
Johnson
, the result of the School District or its personnel determining policy when acting in the exercise of discretion.  There are many factors that a school district must consider and evaluate in providing instructors for a physical education class.  In providing a physical education instructor to teach a class, District 218 has to make decisions about the sufficiency of the instructor's background and qualifications as well as physical condition in terms of teaching the class. District 218, in providing a physical education instructor to conduct this particular swimming class, exercised  its judgment and made decisions as to what qualifications were required of the instructor for the swimming class.  Those decisions required District 218 to balance competing interests and to make a judgment call as to what solution would best serve each of those interests and as such were discretionary in nature.  
Harinek
, 181 Ill. 2d at 342. 

The conduct alleged in paragraph 10(g), specifically, delegating duties to students during the course of a class, is clearly subject to the discretion of the instructor conducting the class and District 218 and its personnel responsible for offering the class.  The student guards were selected to act during the class as an "extra set of eyes" for the teacher.  Delegating duties related to the class to the student guards is not conduct of a ministerial nature as contemplated by the statutes and case law which have excluded ministerial conduct from the immunity provided under section 2-201.   Therefore, regarding the allegations in paragraph 10(g) and (k), under section 2-201 the defendants are entitled to immunity for the exercise of judgment and discretion in their decision to provide Janssen as the physical education instructor for the swimming class and in their decision to delegate class related duties to students during the swimming class.  The granting of summary judgment by the trial court judge, finding the defendants immune from liability under section 2-201 of the Tort Immunity Act, is affirmed as to paragraphs 10(g) and (k) of plaintiff's amended complaint.

In the plaintiff's amended complaint at paragraph 10(1), the plaintiff alleges that injury was the result of failure "... to provide adequately trained instructors and/or other individuals with such degree and skill necessary to respond to emergency situations."  We find the acts or omissions as alleged in subsection (1) against District 218 are ministerial in nature and therefore District 218 is not entitled to immunity under section 2-201 as the allegations in paragraph 10(l).  The allegations that are at issue here do not concern hiring or providing an instructor for a particular class.  The allegations raised in subsection (1) do not involve delegating duties to students while the class is conducted.   Rather, the allegations in paragraph 10(l) raise the question of whether the instructor or individuals provided by District 218 were adequately skilled to respond to emergency situations during the swimming class.  As noted in 
In re Chicago Flood Litigation
, while discretion is exercised in the selection and adoption of a plan for the making of public improvements by a municipality, as soon as it begins to carry out that plan, it acts ministerially and is bound to see the work is carried out in a reasonably safe and skillful manner.  
In re Chicago Flood Litigation
, 176 Ill. 2d at 194.  Here, while the defendants exercised discretion in the selection of Janssen for conducting the Swim I freshmen class, once District 218 began to carry out that class, its acts were ministerial and it was required to see that Janssen conducted that class in a reasonably safe and skillful manner.  We reach this conclusion because the swim class, unlike other classes, involve an activity, namely, "swimming," and an instrumentality, "the swimming pool," that are regulated by law.

The Illinois legislature and the Illinois Department of Public Health (Department) have expressed their concern for the safety of swimmers under 17 years of age.  As such the legislature and the Department have expressed their judgment that swimmers under 17 years of age are in need of the protection provided by either lifeguards or by a "responsible person 17 years of age or older."  
Blankenship v. Peoria Park District
, 269 Ill. App. 3d 416, 422 (1994).  A swimming class conducted in a swimming pool differs from a class conducted in a classroom.  The Swimming Pool and Bathing Beach Act (Ill. Rev. Stat. 1991, ch 111½  par. 1201, 
et seq
.) and the Department regulations (77 Ill. Adm. Code § 820.300 (1985)) impose certain legal requirements on the defendants when operating a pool in connection with conducting a swimming class.

Plaintiff correctly points out that defendants were required to follow the Department's regulations.  Under the applicable Department regulations concerning the operation of the swimming pool for freshmen under 17 years of age who participated in the Swim I class, compliance with one of the following three conditions was required: (1) provide a lifeguard; or (2) provide a responsible person 17 years of age or older, if no lifeguard is present; or (3) provide a written waiver of (1) and (2) by a parent or guardian.  77 Ill. Adm. Code § 820.300 (b)(1) (1985).  In 1999 this regulation was amended to provide more protection for swimmers under 17 years of age (77 Ill. Adm. Code § 820.300 (1999)), however, the preamended version applies to this case.  77 Ill. Adm. Code § 820.300 (1985).

It has long been recognized that the distinction between discretionary and ministerial functions resists precise formulations and that the determination of whether acts are discretionary or ministerial must be made on a case-by-case basis.  
Snyder
, 167 Ill. 2d at 466.  In 
Snyder
, our supreme court  stated that "discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act."  
Snyder
, 167 Ill. 2d at 474.

We do not believe that under paragraph 10(l) of plaintiff's amended complaint, the defendants are entitled to section 2-201 immunity, because we conclude the plaintiff's injury did not result from an act or omission by the defendants in determining policy when acting in the exercise of discretion.  Rather, under the facts of this case, we believe plaintiff's injury resulted from acts or omissions by the defendants that were ministerial in nature and, therefore, under section 2-201 the defendants are not immune from liability for the conduct alleged in paragraph 10(1).  In this case, the Department's regulations mandate certain protection for the 16 year old and younger freshmen swimmers who were required to take the swimming class by School District 218.

Compliance with Department's regulations is mandatory.  Once School District 218 undertook to operate a swimming pool in connection with the freshman swimming class mandated for students under 17, it was subject to the Department's regulations and required to operate the pool in connection with the swimming class in the manner prescribed by these regulations.  These regulations impose minimum safety standards for emergency situations.  77 Ill. Adm. Code § 820.300 (1985).
  Defendants could not exercise discretion and determine to implement a policy that was in violation of the regulation.  We believe that, under the facts presented her, the conduct of the defendants is more properly characterized as ministerial than discretionary.  We apply the definition found in 
Snyder
 of "ministerial acts" as being "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act."  
Snyder
, 167 Ill. 2d at 474.  We find that the conduct performed under a given set of facts in a prescribed manner, in this case, is the conduct of the defendants  in operating the pool for purposes of the swimming class performed in a manner prescribed by the mandate or legal authority of the Department's regulations.  The defendants are required to obey the regulations and do not have the discretion to act in violation of the regulations.

We reject defendants' argument that because the defendants were  not in violation of the Department's regulations discretionary immunity applies.  We are mindful of the fact that the violation of a statute or ordinance designed for the protection of human life is 
prima facie 
evidence of negligence.  
Davis v. Marathon Oil Co.
, 64 Ill. 2d 380, 390 (1976).  However, it is important to recognize that the existence of a duty and the existence of immunity are separate issues.  The question of whether defendants are protected by immunity under the law is separate from the question of whether under the facts the defendants breached a duty owed plaintiff under the law.  The issue addressed by the trial court was whether the defendants were entitled to discretionary immunity for the conduct alleged in paragraph 10(l) of plaintiff's amended complaint. The trial court made no ruling on whether the defendants were in violation of the Department of Health Regulation, or whether the defendants breached a duty owed to plaintiff.  We therefore limit our review to the trial court's finding that the defendants were entitled to discretionary immunity.  When considering whether discretionary immunity is available, the  determinative factor is whether the plaintiff's injury results from a discretionary or ministerial act or omission by the defendant.  "[M]inisterial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act."  
Snyder
, 167 Ill. 2d at 474.  Here, we conclude that plaintiff's injury was the result of District 218 operating the swimming pool for the freshman swimming class in a manner prescribed by the mandate of the Department regulations, and as such the plaintiff's injury results from a ministerial act by the defendants.  Therefore, defendants are not entitled to discretionary immunity under section 2-201.  Moreover, our earlier conclusion that defendants are entitled to preamended section 3-108 immunity regarding allegations of willful and wanton supervision is not in conflict with our finding that District 218 is not entitled to discretionary immunity under section 2-201 for conduct alleged in paragraph 10(l) of the complaint.

             As recognized by the supreme court in 
Epstein v. The Chicago Board of Education
, 178 Ill. 2d 370 (1997), the immunities under section 2-201 and under section 3-108 operate independently of one another:

"The proper way to give meaning to both of these statutory immunities is to recognize that

the discretionary immunity provided for in section 2-201 does not in any way operate to remove or otherwise limit the immunity granted in section 3-108 for the failure to supervise.   More particularly, there is no language in section 2-109 or 2-201 that imposes liability for ministerial tasks, so those provisions cannot be used to override section 3-108(a)'s grant of immunity for the failure to supervise." 

Epstein
, 178 Ill. 2d 370, 382 (1997).  

Paragraph 10(l) alleges a failure to provide trained instructors with such degree and skill necessary to respond to emergency situations, and the emergency situation referenced is in connection with the  supervision of the physical education class.  For the reasons previously discussed in resolving the first certified question we conclude that defendants are entitled to immunity under preamended  section 3-108 for willful and wanton misconduct in the supervision of the swimming class.  Under 
Henrich
 preamended section 3-108 immunizes "willful and wanton misconduct."  
Henrich
, 186 Ill. 2d at 388.  
We note what seems to be a fundamentally unfair result in finding that defendants are not protected by discretionary immunity and therefore are required to conduct the class in compliance with the safety mandate of the Department of Health Regulations, and simultaneously finding defendants are immune from willful and wanton misconduct is resolved by the amended section of 3-108 which does not allow immunity for willful and wanton supervision. 
 
However, by the ruling in 
Henrich,
 we are not permitted to apply amended section 3-108 to this case, as that case held that the absolute immunity of preamended section 3-108 vested at the time this cause of action accrued and the plaintiff cannot seek redress under the amended section 3-108. 
 Henrich
, 186 Ill. 2d at 404.

B. Summary Judgment For Defendants Based On No Evidence of Willful or Wanton Conduct 

Unlike paragraphs 10(g), (k) and (l), which were dismissed by way of summary judgment because the trial court concluded that defendants were entitled to section 2-201 discretionary  immunity, the trial court granted summary judgment on subsections (f), (i) and (j) because it found plaintiff failed to establish the conduct alleged was willful and wanton.  

Plaintiff's allegations under paragraph 10(i) contend defendants failed to operate, maintain and control the swimming pool and equipment, while paragraph 10(j) alleges a failure to provide proper and adequate safety equipment.  Plaintiff argues that he established willful and wanton conduct by presenting evidence that the buoy and ring on the pool deck were tangled
.  Deposition testimony established that, when Krastin went to retrieve a buoy and ring, she found them tangled and decided not to waste time to untangle them before jumping into the pool to retrieve Nathaniel from the bottom of the pool. Plaintiff's argument, however, focuses on Janssen's conduct in failing to observe the condition of the floatation devises before and during swimming class.  Plaintiff claims that if Janssen had walked the pool deck before class, he should have noticed the condition of the safety equipment.  
 

Although the question of willful and wanton conduct is a question of fact for the jury to resolve, the court must first determine if plaintiff has presented enough factual evidence to present the issue to the jury, and, if not, the court should find that defendant's conduct was not willful and wanton as a matter of law. 
Moran v. City of Chicago
, 286 Ill. App. 3d 746, 755 (1997).  After reviewing cases that found sufficient evidence of willful and wanton conduct because of a defective condition or equipment, this court noted that, in those cases, "defendant knew of injuries resulting from defective equipment but failed to remedy the situation."  
Ozuk v. River Grove Board of Education
, 281 Ill. App. 3d 239, 246 (1996).  In 
Ozuk
, plaintiff alleged injury proximately caused by a warped and uneven gymnasium floor and the placement of volleyball nets in the gymnasium.  Plaintiff, however, did not allege school employees knew of the dangerous condition of the gymnasium.  Because plaintiff's allegations failed to show  defendant "ignored an obvious danger" or "showed a reckless disregard for the safety of others," the court affirmed the dismissal of the count of plaintiff's complaint alleging willful and wanton conduct.  
Ozuk
, 281 Ill. App. 3d at 247.

In this case, plaintiff's amended complaint does not allege that defendants ignored an obvious danger, knew of the dangerous condition of the equipment, knew of injuries from the defective equipment and failed to act, or showed a reckless disregard for the safety of the students in the swimming area. Plaintiff only alleges a failure to maintain the equipment in the pool area and generally alleges the failure was willful and wanton.  The evidence failed to indicate how long the buoy and ring were tangled. Tom Newton testified that he checked the pool equipment on a daily basis and if the equipment had been tangled, he would have untangled it.

Moreover, no evidence below indicates that the condition of the buoys proximately caused Nathaniel's drowning. One student attempted to use a shepherd's crook but Nathaniel was unable to grab it. Krastin testified that when she reached Nathaniel in the pool, he was in a passive state and appeared unconscious.  She noted that in this condition it was unlikely that he could use or grab hold of a floatation device.  Plaintiff claims that the tangled equipment delayed Krastin's rescue attempt.  Krastin, however, testified that although she saw the equipment was tangled, she never touched the equipment because she decided not to waste time untangling the equipment.  Plaintiff only speculates that Krastin was delayed and that delay proximately caused Nathaniel's drowning.  Such evidence regarding the condition of the safety equipment at the pool is insufficient to demonstrate that defendants engaged in willful and wanton misconduct that proximately caused the drowning death of Nathaniel.  Plaintiff did not allege that Janssen or the student guards knew of the danger presented by the condition of the equipment, ignored an obvious danger presented by the pool or equipment, or showed a reckless disregard for the safety of others.  We conclude that the allegations in plaintiff's complaint together with the evidence in the record failed to establish a question of fact as to willful and wanton conduct as to the allegation in paragraph 10(i).  Therefore, the trial court properly entered summary judgment on paragraph 10(i), which alleged improper  maintenance of the swimming pool, its area and equipment.

Plaintiff next argues that defendants breached its duty to furnish additional safety equipment to the swimming pool area.  Plaintiff's amended complaint in paragraph 10(j) alleges that defendants did not provide "life preservers, rafts, poles, etc. * * * in the immediate vicinity of the swimming pool to be used in an emergency."  The trial court granted summary judgment based on plaintiff's failure to establish willful and wanton conduct in connection with the allegations in paragraph 10(j). By the time Krastin reached Nathaniel in the pool, he was in such a passive state that additional equipment such as life preservers, rafts, or poles would have been useless.  For the reasons previously discussed we find the trial court properly granted summary judgment in favor of defendants on paragraph 10(j) because plaintiff failed to present enough factual evidence even at this stage of the proceeding to present the issue to the jury.  
Moran
, 286 Ill. App. 3d at 755.

As to the allegations in paragraph 10(f) of plaintiff's amended complaint, we find the record at this stage of the proceeding lacks sufficient evidence of the nature, extent and duration of Janssen's physical disability and its impact on his ability to perform his duties as known by the School District to establish willful and wanton conduct.  Plaintiff did not allege District 218 knew of the danger presented by Janssen's physical disability.  Plaintiff did not allege District 218 ignored an obvious danger created by that physical disability or showed reckless disregard concerning the impact of Janssen's injury on the safety of others.  Therefore, the trial court properly granted summary judgment in favor of defendants on paragraph 10(f) of plaintiff's amended complaint.

C. Trial Court's Denial of Plaintiff's Motion to File a Second Amended Complaint

Plaintiff argues that the trial court erred in denying his motion to file a second amended complaint that contained a fourth count alleging a cause of action under the special duty doctrine.  Courts should liberally allow litigants to amend their pleading "on just and reasonable terms" before final judgment.  735 ILCS 5/2-616 (West 1996).  However, parties do not have an absolute right to amend their pleading, and a circuit court's denial of party's motion to file an amended pleading is reviewed under an abuse of discretion standard.  
Simon v. Wilson
, 291 Ill. App. 3d 495, 508 (1997).

In this case, we fail to find an abuse of discretion.  In 
Harinek
, our supreme court, in rejecting application of the judicially created special duty doctrine to the facts of that case, concluded that "the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act."  
Harinek
, 181 Ill. 2d at 347. 

 CONCLUSION

Preamended  section 3-108(a) immunizes willful and wanton misconduct of a public school teacher and student volunteers in the supervision of students; therefore, we answer the two certified questions on appeal in the affirmative.  Accordingly, we reverse the trial court's denial of defendant's motion for summary judgment regarding preamended section 3-108(a) of the Tort Immunity Act.  Defendants are entitled to immunity under preamended section 3-108(a) for willful and wanton conduct by a certified teacher and student volunteers in the supervision of a required physical education swimming class.   

Based on the immunity of sections 2-201 and 1-109 of the Tort Immunity Act, we also affirm the grant of summary judgment in favor of the defendants regarding paragraphs 10(g) and 10(k) of plaintiff's amended complaint.  We affirm summary judgment regarding paragraphs 10(f), (i) and (j) for lack of sufficient evidence of willful and wanton conduct.  We reverse the grant of summary judgment with respect to paragraph 10(l) of plaintiff's amended complaint under section 2-201, but find the conduct alleged in paragraph 10(l) is entitled to immunity under preamended section 3-108.  We lastly find no abuse of discretion in the trial court's denial of plaintiff's motion to file a second amended complaint.

Both certified questions answered in the affirmative. 

Reversed in part and affirmed in part.

RAKOWSKI and GALLAGHER, JJ., concur.