760 N.E.2d 135 (2001)
326 Ill. App.3d 328
260 Ill.Dec. 56
Kelly Jean BRUGGER, and Debra A. Brugger, Plaintiffs-Appellants,
v.
JOSEPH ACADEMY, INC., a not-for-profit organization, Defendant-Appellee.
No. 1-00-3171.
Appellate Court of Illinois, First District, Sixth Division.
November 16, 2001.
Rehearing Denied October 26, 2001.
*137 Clifford Law Offices, P.C., Chicago (Robert A. Clifford, Brian T. Nash, Timothy P. Rharigan, of counsel), for Appellant.
Stellato & Schwartz, Ltd., Chicago (Theodore W. Pannkoke, Esther Joy Schwartz, Donald E. Stellato, of counsel), for Appellee.
Justice SHEILA M. O'BRIEN delivered the opinion of the court.
Plaintiffs, Kelly Jean Brugger and Debra A. Brugger, appeal an order of the circuit court granting summary judgment in favor of defendant, Joseph Academy, Inc., on plaintiffs' action for willful and wanton misconduct. On appeal, plaintiffs argue: (1) the trial court erred in finding that Joseph Academy was a "local public entity" entitled to complete immunity under sections 1-206 and 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-206, 3-108(a) (West 1996)); and (2) the trial court erred in granting summary judgment when the evidence raises a question of fact regarding Joseph Academy's willful and wanton misconduct. We reverse and remand.
In 1996 and 1997, Kelly Brugger (Brugger) was a student at Joseph Academy, a not-for-profit, private school serving "emotionally handicapped youth ages 10-18." On February 20, 1996, Brugger was treated by her family doctor, Dr. Katzovitz, for a continuing knee problem. Dr. Katzovitz gave Brugger a note stating that she should not participate in any sport involving side-to-side movement. Brugger presented the doctor's note to her gym teacher at the time, Mr. Logiurato, who allowed Brugger to perform "academic P.E." as an alternative to gym class. Michael Schack, the founder and executive director of Joseph Academy, clipped the doctor's note to Brugger's file.
On January 23, 1997, Brugger sat at a desk in the gymnasium performing academic P.E. instead of participating in the game of bombardment (also known as dodge ball). Brugger stated she was talking with Julia, another student sitting out the game, when their gym teacher Mr. Stanton (Stanton) told them to stop "goofing off" in class. Stanton told Brugger to play bombardment, indicating that if she refused, she would receive a failing grade for physical education and not graduate. She had already received a D+ in gym class in November 1996, for "poor participation due to injury." Brugger joined the game and subsequently injured her knee while attempting to dodge a ball thrown at her.
Stanton stated he never knew of Dr. Katzovitz's note prohibiting Brugger from participating in activities involving side-to-side movement and that if he had seen such a note, he never would have allowed her to play without another doctor's note clearing her for such games. Further, Stanton stated that he never told Brugger she would not graduate if she sat out the game.
Anthony Payne, a teacher's aide and activities facilitator, was supervising bombardment on January 23, 1997. He was aware of Dr. Katzovitz's note through Mr. Logiurato and knew that Brugger should not participate in sports involving side-to-side movement. As a result, he never forced her to play the game. After bombardment had already started, Payne observed Brugger walk from the academic P.E. area to join the game. He did not *138 know why she decided to participate. Payne saw Brugger fall as she bent over to pick up the ball.
The trial court granted Joseph Academy's motion for summary judgment on the grounds that Joseph Academy was, a "local public entity" entitled to supervisory immunity for negligence and willful and wanton misconduct under sections 1-206 and 3-108(a) of the Tort Immunity Act. Brugger filed this timely appeal.
Brugger first argues that the trial court erred in finding that Joseph Academy, a private school, was protected from liability under the Tort Immunity Act. Joseph Academy claims that Brugger waived review of this issue by failing to raise it in the trial court. Review of the record indicates that Brugger raised the argument in the trial court that the Tort Immunity Act did not immunize Joseph Academy from liability. Further, a reviewing court may consider an issue where, as here, the issue is one of law and is fully briefed and argued by the parties. People ex rel. Daley v. Datacom Systems Corp., 146 Ill.2d 1, 27, 165 Ill.Dec. 655, 585 N.E.2d 51 (1991); Michigan Avenue National Bank v. County of Cook, 191 Ill.2d 493, 518-19, 247 Ill.Dec. 473, 732 N.E.2d 528 (2000). Therefore, we will consider plaintiffs' argument. The interpretation of the Tort Immunity Act is subject to de novo review. Barnett v. Zion Park District, 171 Ill.2d 378, 385, 216 Ill.Dec. 550, 665 N.E.2d 808 (1996).
At the time of Brugger's injury, section 3-108(a) of the Tort Immunity Act stated:
"(a) Except as otherwise provided by this Act * * * neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." (Emphasis added.) 745 ILCS 10/3-108(a) (West 1996).
Section 1-206 of the Tort Immunity Act expressly includes a school district as a "local public entity." See 745 ILCS 10/1-206 (West 1996). However, the Illinois Supreme Court has made a distinction between public school districts and private schools. Cooney v. Society of Mt. Carmel, 75 Ill.2d 430, 27 Ill.Dec. 485, 389 N.E.2d 549 (1979).
In Cooney, the plaintiff, a private school student who was injured in physical education class, brought suit against the school and his physical education instructors. Count I alleged negligence while count II alleged willful and wanton misconduct. Cooney, 75 Ill.2d at 432, 27 Ill.Dec. 485, 389 N.E.2d 549. Defendant moved to dismiss count II based on the argument that the Tort Immunity Act applied to private schools and that plaintiff had failed to serve the school with a presuit notice of injury as required by that Act. Cooney, 75 Ill.2d at 432, 27 Ill.Dec. 485, 389 N.E.2d 549. The trial court granted the motion to dismiss count II. Cooney, 75 Ill.2d at 432, 27 Ill.Dec. 485, 389 N.E.2d 549. On appeal, the supreme court held that the legislature did not intend for the Tort Immunity Act to apply to private schools. The supreme court reasoned that section 1-206 of the Tort Immunity Act did not expressly include private schools and that "[w]hile private schools serve the public good by educating children, the performance of that beneficial function does not transform such schools from private into public entities." Cooney, 75 Ill.2d at 432-34, 27 Ill. Dec. 485, 389 N.E.2d 549.
Joseph Academy argues that subsequent to Cooney, the legislature amended the definition of "local public entity" in section 1-206 of the Tort Immunity Act to include "any not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1-206 (West 1996). Joseph Academy argues that the amended *139 definition effectively erased the court's holding in Cooney that the Tort Immunity Act does not apply to private schools.
We disagree. The amendment did not explicitly refer to private schools or give any indication that the General Assembly objected to the supreme court's interpretation in Cooney. "[T]his court presumes that the legislature knew of the prior interpretation placed on its language by judicial decision. [Citation.] Where terms used in a statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments, they are to be understood as previously interpreted by the courts unless the legislature clearly indicates a contrary intention." (Emphasis added.) Carver v. Bond/Fayette/Effingham Regional Board of School Trustees, 146 Ill.2d 347, 353, 167 Ill.Dec. 1, 586 N.E.2d 1273 (1992). The legislative amendment to section 1-206 does not "clearly indicate[]" an intention to overrule Cooney; accordingly, Cooney's interpretation of section 1-206 remains a part of the statute. Our holding is supported by Henrich v. Libertyville High School, 186 Ill.2d 381, 238 Ill.Dec. 576, 712 N.E.2d 298 (1998), supplemental opinion filed on denial of rehearing (1999), in which our supreme court reiterated that the Tort Immunity Act does not apply to private schools. The plaintiff in Henrich was a public high school student who was injured during a physical education class. Count I of his complaint alleged that the public school district's actions leading to his injury constituted willful and wanton misconduct. Henrich, 186 Ill.2d at 384-85, 238 Ill.Dec. 576, 712 N.E.2d 298. The trial court dismissed plaintiffs complaint, finding that section 3-108(a) of the Tort Immunity Act immunized the school district for allegations of willful and wanton misconduct. Henrich, 186 Ill.2d at 385, 238 Ill.Dec. 576, 712 N.E.2d 298. The issue before the supreme court was whether the immunity provided by sections 24-24 and 34-84a of the School Code (105 ILCS 5/24-24, 34-84a (West 1994)) or the immunity provided by section 3-108(a) of the Tort Immunity Act controlled in plaintiffs action. Henrich, 186 Ill.2d at 383, 238 Ill. Dec. 576, 712 N.E.2d 298. Under the School Code, educators are immunized from acts involving ordinary negligence but not from acts involving willful and wanton misconduct. Henrich, 186 Ill.2d at 388-89, 238 Ill.Dec. 576, 712 N.E.2d 298. In contrast, section 3 108(a) of the Tort Immunity Act immunizes a school district for acts involving both negligent conduct and, willful and wanton misconduct.[1]Henrich, 186 Ill.2d at 387, 238 Ill.Dec. 576, 712 N.E.2d 298.
The supreme court noted that while section 24-24 of the School Code applies equally to private and public schools, the Tort Immunity Act "does not apply to private schools, but only to public schools." (Emphasis added.) Henrich, 186 Ill.2d at 392, 238 Ill.Dec. 576, 712 N.E.2d 298. The court thus concluded that "[b]y the plain language of section 3-108(a) of the Tort Immunity Act, the legislature has chosen to grant public school teachers and public school districts greater immunity than private school teachers and private schools." Henrich, 186 Ill.2d at 392, 238 Ill.Dec. 576, 712 N.E.2d 298. Therefore, the court afforded the greater immunity of section 3-108(a) to the public school before it and affirmed the dismissal of plaintiffs claim alleging willful and wanton misconduct. Henrich, 186 Ill.2d at 395, 238 Ill.Dec. 576, 712 N.E.2d 298.
*140 Joseph Academy argues that Henrich's discussion of the inapplicability of the Tort Immunity Act to private schools was dicta; we disagree, as the court's discussion was integral to its holding that section 3-108(a) of the Tort Immunity Act, and not section 24-24 of the School Code, applied to the plaintiffs' complaint. See also Trotter v. School District 218, 315 Ill.App.3d 1, 8-9, 247 Ill.Dec. 899, 733 N.E.2d 363 (2000); D.M. v. National School Bus Service, Inc., 305 Ill.App.3d 735, 741, 238 Ill.Dec. 950, 713 N.E.2d 196 (1999); Carter v. Du Page County Sheriff, 304 Ill.App.3d 443, 450, 238 Ill.Dec. 161, 710 N.E.2d 1263 (1999) (citing to Henrich and its holding that the Tort Immunity Act protects public schools, but not private schools).
Moreover, there is a distinction between the public interest and public business. Many things are in the public interest: Clean air, safe roads, good schools and adequate housing. A private endeavor, that improves, affects or is in the public interest, does not, however, necessarily become a public business. Education is, without doubt, an endeavor in the public interest. But it cannot be said that the moment a student opens a book in a private school, privately financed and operated, that the school is now engaged in public business and is the same as a public school, fueled by taxpayer dollars, operated by public employees and subject to extensive public regulation.
Such a broad reading of this amendment would obliterate the concept of a private school in Illinois. If the General Assembly wished to alter the distinction between publicly supported and operated schools and privately supported and operated schools, the Assembly, in its wisdom, would have made such a dramatic change clearer. We decline to read such a change into the amendment here.
Since Joseph Academy is a private school, it is excluded from the protections of the Tort Immunity Act. Cooney, 75 Ill.2d at 432-34, 27 Ill.Dec. 485, 389 N.E.2d 549; Henrich, 186 Ill.2d at 392, 238 Ill. Dec. 576, 712 N.E.2d 298. Accordingly, the trial court erred in granting summary judgment to Joseph Academy based on sections 1-206 and 3-108(a) of the Act.
Next, Joseph Academy argues that this court should affirm the grant of summary judgment because Brugger did not present a factual basis that Joseph Academy engaged in willful and wanton misconduct. Although the trial court did not base its order on this issue, a reviewing court may affirm the trial court's decision for any reason supported by the record. In re Application of the County Collector of DuPage County for Judgment for Delinquent Taxes for the Year 1992, 181 Ill.2d 237, 246, 229 Ill.Dec. 491, 692 N.E.2d 264 (1998). Accordingly, we address the argument.
Summary judgment is proper if, in the light most favorable to plaintiffs, "the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Towner v. Board of Education of the City of Chicago, 275 Ill.App.3d 1024, 1031, 212 Ill.Dec. 333, 657 N.E.2d 28 (1995). The standard of review for summary judgment orders is de novo. Boub v.. Township of Wayne, 183 Ill.2d 520, 524, 234 Ill.Dec. 195, 702 N.E.2d 535 (1998).
Willful and wanton conduct includes not only intentional acts, but also acts exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger or a failure to discover the danger by the *141 exercise of ordinary care. Ziarko v. Soo Line R.R. Co., 161 Ill.2d 267, 273-74, 204 Ill.Dec. 178, 641 N.E.2d 402 (1994). Brugger presented evidence that Joseph Academy, through Stanton, Payne and Schack, engaged in willful and wanton misconduct by forcing Brugger to play bombardment upon penalty of receiving a failing grade when it knew or should have known of the doctor's note excusing her from such activities. Stanton provided contrary testimony, stating that he was unaware of the doctor's note and that he did not threaten to fail Brugger if she did not play bombardment. The differing testimony raises questions of material fact that are inappropriate for resolution by summary judgment.
Joseph Academy argues that Hopwood v. Elmwood Community High School District 322, 171 Ill.App.3d 280, 121 Ill.Dec. 441, 525 N.E.2d 247 (1988), compels a different result. Hopwood appealed the trial court's order granting summary judgment in favor of defendant Lois Silzer, her physical education teacher at the time of her injury. At issue was whether Silzer's requirement that Hopwood play "hoccer" with a weak knee constituted willful and wanton misconduct. Hopwood, 171 Ill. App.3d at 284, 121 Ill.Dec. 441, 525 N.E.2d 247. At the time of Hopwood's injuries, there was no current doctor's note categorically prohibiting her from participating in physical education activities; rather, the doctor had given Hopwood the discretion of participating depending upon whether she could tolerate the day's activities. Hopwood, 171 Ill.App.3d at 282, 121 Ill. Dec. 441, 525 N.E.2d 247. Since Hopwood did not inform Silzer that she was unable to tolerate playing hoccer, the appellate court held that Silzer did not act wilfully and wantonly by requiring her to play. Hopwood, 171 Ill.App.3d at 284-85, 121 Ill.Dec. 441, 525 N.E.2d 247. Hopwood is inapposite, as here there was evidence that Brugger presented Joseph Academy with a current doctor's note precluding her from participating in any sport involving side-to-side movement. As discussed, a question of material fact exists as to whether defendant committed willful and wanton conduct by disregarding the doctor's note and forcing her to play bombardment, a sport involving side-to-side movement.
For the foregoing reasons, we reverse the order of the trial court granting summary judgment for Joseph Academy and remand for further proceedings. As a result of our disposition of this case, we need not address the parties' other arguments on appeal.
Reversed and remanded.
GALLAGHER, P.J., and FROSSARD, J., concur.
NOTES
[1] Effective December 2, 1998, the legislature amended section 3-108 to allow claims of willful and wanton misconduct against local public entities and their employees. See 745 ILCS 10/3-108 (West 2000).